FRANK E. LABOUNTY & others *vs.* JOHN VICKERS & others.

Bristol.     February 8, 1967. — April 5, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Easement. Beach. Real Property,* Easement, Beach, "Indefinite reference," Restriction. *Adverse Possession and Prescription.*

The record in a suit in equity warranted conclusions that the owners of
    lots in a large tract of land bounded on the west by a public way and on
    the east by a tidal river had an implied easement appurtenant to their
    lots to use a strip forty feet wide leading easterly from the public way
    for access to a beach area of the same width at the easterly end of the

strip and to use such area for beach and bathing purposes where it appeared that the lot owners' common predecessor in title had recorded a plan subdividing the tract into many houselots and showing the strip running from the public way to the high water mark of the river, and later, as the first conveyances out of the subdivision, had conveyed all his river lots on the north and south sides of the strip by deeds referring to the recorded plan and bounding them "by" the strip and conveying also a right of way over the strip, but without other reference to benefits of or encumbrances on the river lots, and that for many years owners of the lots in the subdivision had used the beach area forty feet wide for bathing and general beach purposes and the owners of the river lots had acquiesced in such use [344–345]; but a conclusion was not warranted that, apart from prescription, the beach north and south of the strip could be used for beach and bathing purposes by lot owners other than the owners of the river lots, although the common predecessor in title had so intended, since neither the deeds to the river lots nor the plan indicated the reservation of any such easements.   [349]

G. L. c. 184, § 25, did not make unenforceable on the ground of "indefinite reference" an implied easement in favor of the owners of lots in a subdivision to use a strip of land through the subdivision for access to a certain river beach area and to use that area for beach and bathing purposes where it appeared that the recorded deeds creating the easement, to which the lot owners were not parties, referred to the strip as a boundary and to lot numbers on a plan previously duly recorded and recited the location of the plan in the public records.   [346–347]

An affirmative easement is not included in "restrictions on the use of land" within G. L. c. 184, §§ 26–30.   [347–348]

Acquisition of an easement by prescription to use for the usual beach and bathing purposes the beach of a river suitable only for such use was not precluded as a matter of law because of alleged "undeveloped, wild and unenclosed character" of the beach.   [348–349]

Certain plaintiffs in a suit in equity, owners of some of the lots in a subdivision of land, did not acquire an easement by prescription appurtenant to their respective lots to use a river beach bordering the defendants' lots in the subdivision through prescriptive use of the beach by unidentified owners of lots in the subdivision or through the acquisition of an easement by prescription by two identified owners of lots therein other than such plaintiffs.   [349–350]

BILL IN EQUITY filed in the Superior Court on August 20, 1964.

The defendants and the plaintiffs appealed from a final decree entered by *Ford,* J., following confirmation of a master's report.

*William Schwartz* (*Lloyd Earl Belford* with him) for the defendants.

*John F. O'Donoghue* for the plaintiffs.

SPIEGEL, J.   This is a bill in equity brought by the owners of certain lots in a subdivision against the owners of certain other lots in that subdivision to restrain them from obstructing passage along a strip of land leading to the shore of a stream and from denying or hindering the use of the beach along that river by the plaintiffs.   The case was referred to a master.   The plaintiffs' and the defendants' exceptions to the master's report were overruled and the report was confirmed.   A final decree was entered which provided that all of the plaintiffs, except one Lowney, have "the right to use a forty foot strip of beach, for all the usual beach and bathing purposes, at the easterly end of . . . [the strip of land].   The plaintiffs, except [one] Berube and [one] Aldrich, have no right to use the beach west of . . . [the river] north and south of said forty foot strip."   The decree also provided that Aldrich had the right to use the beach north of the forty foot strip and that Berube had the right to use the beach south of the strip. The plaintiffs and the defendants appealed from the final decree.

The master found the following relevant facts.   In 1879 one Patience Gardner became the owner of a 25.5 acre tract of land.   The parcel was bounded on the west by Gardner's Neck Road, a public way, and on the east by Lee's River, a tidal stream.   (See sketch.)

In 1888 she conveyed a 4.1 acre parcel which formed the northeast corner of the tract to one Stephen S. Manchester, reserving for herself, her heirs and assigns "a right of way . . . next adjoining the south line thereof to and from Lee's River and shore thereof, with the right to bathe there." In 1898 she was duly adjudicated insane and one Frank I. Sherman was appointed her guardian.

In 1899 Sherman "had a plan of a section of the original 25.5 acre tract subdivided into forty-two houselots" by one E. M. Corbett, an engineer.   "[T]his plan was then recorded in the Fall River District Registry of Deeds in Plan Book 2 Page 37."   All of the parties, except one, are presently owners of the lots shown on that plan.

Sherman made conveyances from the subdivision in 1900 and 1902 to the predecessors in title of the defendants John and Pauline Vickers. The lots numbered 27 and 28 are located on the north side of Riverview Avenue and are bounded on the east by Lee's River. "[T]he property conveyed was referred to [in the deeds] by lot numbers on the said 1899 plan, and they further provided that Riverview Avenue was forever to be kept open as a right of way to said parcel. No reference was made to any other easements or rights benefiting or encumbering the property."

In 1901 Sherman made a conveyance out of lots numbered 41 and 42 to the predecessors in title of the defendants James and Rita Vickers. "It was a deed in all respects similar to the 1900 and 1902 deeds . . . . All three deeds employed the language 'by said Riverview Ave.' and the parties herein agree that the grantees of these lots acquired the fee to the center line of the way. . . . By the aforesaid deeds out, all the land on the 42 lot subdivision bounded by Lee's River was conveyed out. Such land as Patience Gardner had owned on the River, abutting the subdivision on the south, had been conveyed out previously."

Patience Gardner died between 1901 and 1913. Her heirs conveyed all the remaining lots except one between 1913 and 1928. The plaintiffs, except Lowney, are the successors in title to those original grantees.

"Riverview Avenue was laid out and accepted by the Town [of Swansea] in 1942 easterly from Gardner's Neck Road to a point about 160 feet westerly from Lee's River. The section not accepted is located in front of the property of the defendants and is one of the areas in dispute here. It is cleared to the width of the street and passable for both vehicles and foot passengers, though not macadamed. It extends to a point around 20 feet from the high water mark, at which point there is about a 3 foot drop to the shore. The shore area consists of some large boulders and is surfaced by small stones and coarse earth. . . . Almost all of the homes originally constructed on the subdivision lots

were summer cottages and were occupied only during the summer months. . . . The nearest public beach is about a mile and a half away from the subject area."

Based on the foregoing subsidiary findings the master reached the following conclusions. "In so far as it is a question of fact, I find that it was the intention of the original grantor and subdivider that the owners of each lot on the subdivision plan would have reciprocal rights in common to use the ways shown on the plan for vehicular and foot access to and from Gardner's Neck Road and their lots. I further find that it was the intention of the grantor subdivider that such lot owners would acquire the right in common with all others to use said ways as access to and from their lots to the shore area at the end of Riverview Avenue, and that the foregoing rights be appurtenant to every lot on the subdivision plan.

"I find it was the intention of the grantor subdivider that each grantee, and his heirs and assigns, would have the right to use the aforedescribed shore area for all customary beach and water purposes, including bathing. The plan shows Riverview Avenue extending all the way to the high water mark of Lee's River. I find that, as each deed out described the lots as bounded by the ways shown and made specific reference to the recorded plan, the grantees knew or should have known of the said intent and consequently, in so far as the same is a question of fact, took subject to and with the benefit of the common rights. In addition, I find that the character of the area and the summer uses to which it was originally put are consistent with the before stated intent. Also, I find that the uses to which the land was subsequently put are consistent with the intent found."

With regard to the beach to the north and south of the 40 foot strip, the master found "it was doubtless the intent of the subdivider, originally, that the owners of the 42 lots would have beach privileges all along the subdivision's shoreline, and not just the 40 foot way section. . . . I find, however, that such an intent cannot be found to be part of the contract with the original grantees of the defendants'

property for their deeds were the first conveyances out, no reservation or reference to shore uses was made therein, and the plan itself indicates nothing concerning the waterfront other than that the defendants' lots are bounded by Lee's River.

"Neither the instruments nor the circumstances warrant a finding, as against the defendant owners, that their shore front property is burdened by beach rights in all the other lot owners, except as to such rights as have been previously found to be in the lot owners with respect to the 40 foot strip at the end of Riverview Avenue.

"With respect to the issue of rights acquired by prescription" by the plaintiffs, the master found that the plaintiffs had used Riverview Avenue since at least 1926 to gain "access to and from their lots and the shore opposite Riverview Avenue and Gardner's Neck Road" and had used the 40 foot strip of shore at the end of Riverview Avenue to bathe, clam, picnic and do "all those things customarily associated with beach use. . . . This use was done openly, and regularly . . . at . . . will, without hindrance, under . . . claim of right and without seeking or gaining permission."

With regard to the shore areas other than the 40 foot strip at the end of Riverview Avenue, the master found that "there is no evidence from which I can find any such use by . . . [nine of the plaintiffs] of this area as would give them rights by adverse possession," and that the use made by one of the plaintiffs was not continuous or under a claim of right. He found facts from which he concluded that the plaintiff Berube had acquired the right to use the shore area south of the 40 foot strip and that the plaintiff Aldrich had acquired similar rights to the shore area north of the strip.

The master reserved the question of "whether the rights acquired by prescription by the identified lot owners are similarly acquired by all other lot owners on the subdivision." The judge ruled that the other lot owners had not acquired such rights.

## I.

### THE DEFENDANTS' APPEAL.

1. The defendants argue first that the plaintiffs do not have an easement reserved by implication by their predecessors in title.

The origin of an implied easement "whether by grant or by reservation . . . must be found in a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." *Dale* v. *Bedal,* 305 Mass. 102, 103, and cases cited. The master made extensive subsidiary and ultimate findings that the predecessors in title of the present parties did intend that an easement be reserved in Riverview Avenue all the way to the high water mark of Lee's River. There was no error in these findings.

The deeds to the defendants' predecessors in title "employed the language 'by said Riverview Ave.' " in describing the lots conveyed and referred to Riverview Avenue as a right of way. The deeds also referred to a plan which had been recorded in the Registry of Deeds and the plan clearly showed Riverview Avenue as a 40 foot strip running by the lots down to the high water mark of Lee's River. "A plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed." *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.* 254 Mass. 350, 354. These references in the deeds and plan are enough to support the master's conclusion that an easement of way had been created in the strip bordering the lots of the defendants. *Murphy* v. *Mart Realty of Brockton, Inc.* 348 Mass. 675, 678.

The conclusion of the master is reinforced by the fact that Riverview Avenue is shown on the plan as extending all the way to the high water mark of Lee's River. *Rahilly* v. *Addison,* 350 Mass. 660. It seems obvious that there

would be no need to extend the way to the high water mark if the only purpose for the way was to give the defendants' predecessors in title access to their lots from Gardner's Neck Road.

The evidence also justifies the master's conclusion that the scope of the easement in the 40 foot strip included the use of the part of the strip abutting Lee's River for beach and bathing purposes. Where, as here, a strip is laid out to the high water mark of a river it is a reasonable inference that the grantor who reserved the easement intended to put the land so reserved to a use which was natural for the type of land reserved. See *Rahilly* v. *Addison, supra*. It was not necessary, as the defendants contend, that the plan indicate in so many words that the shore was to be used for beach purposes. Furthermore, there was evidence that the strip had been used for bathing and general beach purposes for many years by the plaintiffs and their predecessors, the owners of the dominant estate, which use had been acquiesced in by the defendants. "It is well settled that when an easement is created by deed, but its precise limits and location are not defined, the location and use of the easement by the owner of the dominant estate for many years, acquiesced in by the owner of the servient estate, will be deemed to be that which was intended to be conveyed by the deed." *Kesseler* v. *Bowditch*, 223 Mass. 265, 268. We think that the same principle is applicable in determining the scope of an easement created by implication.

"The question as to the extent and limits of a reasonable right of way . . . [is] largely one of fact. . . . Such a way is not necessarily confined to the purposes for which the dominant estate was used at the time of the grant but is a right of way for every reasonable use to which the dominant estate may be devoted." *Rajewski* v. *MacBean*, 273 Mass. 1, 6.

The defendants seek to distinguish the *Rahilly* case on the grounds that the plaintiffs did not show a common scheme on the part of the original grantors of these lots. But this is not a case in which the plaintiffs must rely on

such a common scheme. Their predecessors in title owned an easement in the land of the defendants' predecessors in title and that easement passed to the plaintiffs by the deeds of their predecessors. G. L. c. 183, § 15. See *Murphy* v. *Mart Realty of Brockton, Inc., supra.*

2. The defendants objected to the admission in evidence of a probate petition on the ground that it was hearsay. We need not consider the merits of their arguments on this issue for we are of opinion that the master's conclusions are adequately supported by the other evidence.

3. The defendants argue that G. L. c. 184, § 25, makes this easement unenforceable. The statute provides in material part: "No indefinite reference in a recorded instrument shall subject any person not an immediate party thereto to any interest in real estate, legal or equitable . . . if he is not otherwise subject to it or on notice of it. An indefinite reference means (1) a recital indicating directly or by implication that real estate may be subject to restrictions, easements, mortgages, encumbrances or other interests not created by instruments recorded in due course . . . (4) any other reference to any interest in real estate, unless the instrument containing the reference either creates the interest referred to or specifies a recorded instrument by which the interest is created and the place in the public records where such instrument is recorded."

The deeds referred (a) to Riverview Avenue as a boundary and (b) to lot numbers on a plan, and recited the location of the plan in the public records. In so far as the recital that Riverview Avenue formed a boundary was an indication that the real estate was subject to an easement, that easement was created by the very deed containing the recital and "recorded in due course."[1] The reference to the plan was not a "recital" within clause (1) of the stat-

---

[1] General Laws c. 184, § 25, provides that: "No instrument shall be deemed recorded in due course unless so recorded in the registry of deeds . . . as to be indexed in the grantor index under the name of the owner of record of the real estate affected at the time of the recording." We construe the "owner of record" to mean the person shown by the public records to be the owner immediately prior to the recording of the instrument.

ute and hence is governed by clause (4). Strictly speaking, the deed "creates" the easement, *Morse* v. *Copeland,* 2 Gray, 302, even though it is said that the easement is "created by implication," because it is through an interpretation of the deed together with the attendant circumstances that such an easement is found to exist. Thus "the instrument containing the reference . . . creates the interest referred to" and is not "indefinite" within clause (4). But even if the plan is thought to "create" the easement, it was "a recorded instrument" referred to in the deed and its "place in the public records" was specified in the deed.

4. The defendants also contend that G. L. c. 184, §§ 26–30, prevent the plaintiffs from enforcing their easements. Section 28 provides in material part, "No restriction imposed before January first . . . [1962] shall be enforceable after the expiration of fifty years from its imposition unless a notice of restriction is recorded before the expiration of such fifty years or before January first . . . [1964] whichever is later, and in case of such recording, twenty years have not expired after the recording of any notice of restriction without the recording of a further notice of restriction."

Section 26 provides that "All restrictions on the use of land or construction thereon which run with the land subject thereto and are imposed by covenant, agreement or otherwise . . . shall be subject to this section and sections twenty-seven to thirty."

The defendants argue that "It would seem that an implied easement, such as the one involved in the case at bar, is within the broad coverage of these sections." We do not agree.

A "restriction on the use of land" is a right to compel the person entitled to possession of the land not to use it in specified ways. See *Whitney* v. *Union Ry.* 11 Gray, 359, 363. The restriction may be imposed by a negative easement (e.g., *Ladd* v. *Boston,* 151 Mass. 585, 588), by an equitable servitude or by a covenant running with the land. But the holder of such a restrictive right has no right to use

the land on which he holds the restriction as he would if he held an affirmative easement. See *Boston Water Power Co.* v. *Boston & Worcester R.R.* 16 Pick. 512, 522; Am. Law of Property, § 8.5. Only by a strained use of words can such an easement be considered a "restriction on the use of land." We are not inclined to construe this statutory phrase to include affirmative easements.

The purpose of §§ 26–30 was to enable "one or more landowners to remove or prevent the enforcement of obsolete, uncertain or unenforceable restrictions . . . ." Judicial Council of Massachusetts, Thirty-Sixth Report, p. 81. This Judicial Council Report makes clear that this legislation was not concerned with affirmative easements. If such easements were to be included in these sections it would have been a simple matter for the Legislature to include them by specific language as it did in G. L. c. 184, § 25.

5. The defendants also claim error in the master's findings relating to the rights of the plaintiffs acquired by prescription. It is necessary to consider only those findings with respect to the plaintiffs Aldrich and Berube who are the only plaintiffs found to have acquired rights by prescription in the portion of the defendants' shore to the north and south of the 40 foot strip.

The defendants argue that "[a]s a matter of law, none of the plaintiffs acquired an easement by prescription, because of the undeveloped, wild and unenclosed character of the land." The land consisted of a strip of beach which was depressed three feet from nearby land. It had some large boulders and was covered with coarse earth and small stones, and marked seasonally by eel grass growth.

The master found that the plaintiff Berube's use of the beach had "been for the customary bathing purposes; it was open and notorious, under claim of right, for the requisite 20 years, and adverse." He made a similar finding with respect to the plaintiff Aldrich.

On the record before us it appears that the only type of use for which the land in question is suited is for "the usual beach and bathing purposes." In these circumstances the

plaintiffs' claim cannot be defeated on the ground that the land is "undeveloped [and] wild."

The cases cited by the defendants in support of their arguments concern the acquisition of title to land by adverse possession, e.g., *Slater* v. *Jepherson,* 6 Cush. 129, 131–132, *Parker* v. *Parker,* 1 Allen, 245. The reason for this rule in the case of adverse possession is that the possession must be shown to be exclusive. Acts of enclosure or cultivation are evidence of exclusive possession. *Slater* v. *Jepherson, supra.* It is not necessary, on the other hand, for one claiming an easement by prescription to show that his use has been "exclusive" in that sense. He must show that his use has been exclusive in the sense that he relies on his own use or those under whom he claims and not on the use by third parties. Partridge, Deeds, Mortgages and Easements, § 66, p. 259. See *Curtis* v. *Angier,* 4 Gray, 547; *Ivons-Nispel, Inc.* v. *Lowe,* 347 Mass. 760.

## II.

### The Plaintiffs' Appeal.

1. The plaintiffs first argue that "[t]he master's finding that the subdivider's original intent to reserve all of the shore area for the use of the lot owners in the subdivision was not part of the contract with the original grantees of the defendants' property is not consistent with his subsidiary findings." We do not agree.

It was essential to the master's finding favorable to the plaintiffs with respect to the 40 foot strip that the recorded plan show the strip running all the way to the high water mark of the river. A person examining that plan could reasonably discern that a 40 foot easement had been reserved. But there is nothing on the plan to show that the beach area to the north and south of the strip was similarly reserved. The master's conclusion was justified and not inconsistent with his other findings of fact.

2. The master found that "there is no evidence from which I can find any . . . use by" any of the plaintiffs (ex-

cept two) "as would give them rights by adverse possession [*sic*]" in the parts of the beach to the north and south of the 40 foot strip. A similar finding was made, denying the claim of the plaintiff Labounty. The master did find that "other lot owners . . . have used this shore area . . . [for a period] far in excess of twenty years; that it was open, notorious, under claim of right, [and] uninterrupted . . . [but that] [b]eyond the before mentioned specific findings of use by particular lot owners . . . there was no evidence from which I could find which other lot owners made similar use of the shore."

The plaintiffs argue that in these circumstances "the owners of all the lots in said subdivision [are] entitled to claim the benefits of any prescriptive rights so gained as appurtenant to their lots." They contend that "[t]hey claim an exclusive right as appurtenant to their ownership in the lots of the subdivision to use a beach formerly owned by the common predecessor in title of each of their lots and also of the defendants' lots."

The prescriptive rights, if any, were accrued not by the common grantor of the plaintiffs, but by those individuals who made use of the beach area under the required conditions. If the plaintiffs get anything from their common grantor, it is an easement or equitable servitude, neither of which was proved. Except for two plaintiffs, there was a failure of proof as to which lot owners had acquired an easement by prescription. The master was correct in concluding that evidence of some use of the beach by unidentified lot owners in a way which would have given them an easement by prescription if they had been identified was not sufficient to conclude that all the lot owners had acquired such rights. Furthermore, the judge was correct in ruling that the rights acquired by the identified lot owners were not similarly acquired by all the lot owners.

*Decree affirmed with costs.*