GEIGER vs. NEEDHAM MILLER, LLC, MISC 20-000269

































 
 DAVID R. GEIGER, Plaintiff, v. NEEDHAM MILLER, LLC, Defendant
 MISC 20-000269 
 APRIL 27, 2021
NORFOLK, ss.
ROBERTS, J.
MEMORANDUM OF DECISION AND ORDER ALLOWING DEFENDANT NEEDHAM MILLER LLC'S MOTION FOR SUMMARY JUDGMENT














 Introduction 





 At issue in this case is an approximately 270 square foot area of the defendant Needham Miller, LLC's ("the LLC") property ("the Disputed Area") [Note 1] over which plaintiff David R. Geiger ("Mr. Geiger") claims ownership by virtue of adverse possession based on his use of the Disputed Area as an extension of his front yard. Mr. Geiger filed a Verified Complaint, Plaintiff's Ex Parte Motion For Temporary Restraining Order And Preliminary Injunction ("the PI Motion"), Plaintiff's Ex Parte Motion For Approval Of Notice Of Lis Pendens ("the LP Motion") and a memorandum of law in support of those motions on July 15, 2020. A hearing was held on July 28, 2020, after which the PI Motion was denied and the LP Motion was allowed. A discovery deadline of March 1, 2021 was established. On December 2, 2020, the LLC filed Needham Miller LLC's Motion For Summary Judgment ("the Motion") and supporting documents. Mr. Geiger filed his opposition thereto, together with supporting documents, on January 15, 2021. A hearing was held on April 20, 2021. This memorandum of decision and order ALLOWING the LLC's Motion follows. 





Background 





 The following facts established in the record and pertinent to the Motion and opposition thereto are undisputed or are deemed admitted. 





 1. Mr. Geiger owns and resides at the property at 22 Tanglewood Road, Wellesley, Massachusetts ("the Geiger Property"). Plaintiff's Response To Defendant's Statement Of Material Facts In Support Of Defendant's Motion For Summary Judgment and Defendant's Response To Paragraph [sic] Added To Defendant's Statement Of Material Facts ("SOMF") ¶ 1. 





 2. The LLC owns the property at 16 Tanglewood Road, Wellesley, Massachusetts ("the LLC Property"). SOMF ¶ 2. 





 3. The Geiger Property abuts the LLC Property along the Geiger Property's southeast and the LLC Property's northwest side lines. Plan And Profile Of Part Of Tanglewood Road Wellesley, Mass. Scale Horz. = 1 inch = 40 feet Vert. = 1 inch = 4 feet Jan. 5, 1957 Owner Wellesley Construction Co., Inc. 47 River Street Wellesley, Mass. Engineer Joseph Selwyn 14 Linden Ave. Belmont, Mass. SOMF ¶ 3. 





 4. The Geiger Property and the LLC Property both abut Tanglewood Road. SOMF ¶ 4. 





 5. Mr. Geiger acquired the Geiger Property on October 20, 1989. SOMF ¶ 5. 





 6. Mr. Geiger has resided continuously in a single-family home at the Geiger Property since approximately March 1990. SOMF ¶ 6. 





 7. Since Mr. Geiger's acquisition of the Geiger Property, the boundary between the Geiger Property and the LLC Property in the area at issue has been marked by a shrub, tree and planting bed on the LLC Property ("the Bed"). SOMF ¶ 7. 





 8. The vegetation in the Bed has at all times been a variety of permanent and well filled in evergreen shrubs (likely including some type of juniper) and other taller evergreen plantings. SOMF ¶ 23.





 9. When Mr. Geiger first moved to the Geiger Property, the Bed was already fully established and mature, and had the appearance of having been there for some years. SOMF ¶ 24. 





 10. The Bed has been described more recently as an "overgrown, wooded area" that extended from the sidewalk toward the rear of the properties. SOMF ¶¶ 35-36. 





 11. Further back from the street, the boundary between the two properties has been marked by a fence on the LLC Property. Video Conference Deposition Of Stephen Petrucci, dated December 22, 2020 ("Petrucci Dep.") at p. 39, l. 1 - p. 40, l. 23. 





 12. There is an area between the Bed and the fence, along the property line, that is open between the two properties. Petrucci Dep. at p. 41, l. 5 - p. 42, l. 9. 





 13. Mr. Geiger's use of the Disputed Area consists of the following acts (either alone or by his agents): weekly mowing during the growing season; fertilizing and applying other lawn maintenance materials; periodic seeding; seasonal clearing of fallen leaves; removal of tree branches and other debris after storms; and seasonally watering multiple times each week with irrigation systems. SOMF ¶ 8. 





 14. Mr. Geiger or his agents also applied mulch in the Disputed Area. SOMF ¶ 27. 





 15. Although the timing of this activity is not set forth in the record, Mr. Geiger created a circular bed of mulch around the base of a maple tree that he enlarged over time, ultimately converting it to an irregularly shaped bed extending across the entire width of the disputed area, SOMF ¶ 31, as shown on a hand-drawn plan attached to the Verified Complaint filed herein as Exhibit 3. 





 16. Approximately one-third to one-half of the Disputed Area is covered with mulch. Verified Complaint, Ex. 3. 





 17. Professional arborists engaged by Mr. Geiger have also had full access to and moved across the Disputed Area to tend to two trees in Mr. Geiger's yard. SOMF ¶ 9. 





 18. Leaving aside the lawn and mulching maintained by Mr. Geiger in the Disputed Area, there are no plantings, structures, fences or equipment (including irrigation sprinkler heads) maintained by Mr. Geiger within the Disputed Area. SOMF ¶ 20. 





 19. The LLC Property was previously owned by Alice and Stewart Ward ("the Wards"). SOMF ¶ 10. 





 20. Until their respective deaths, the Wards resided at the LLC Property as their principal residence. SOMF ¶ 11. 





 21. The Wards employed Petrucci Landscaping Co. Inc. ("Petrucci Landscaping") from 2003 through 2018 to do landscaping work on the LLC Property. SOMF ¶ 15.





 22. When the Wards first employed Petrucci Landscaping, Mr. Ward showed Mr. Petrucci the location of the property lines for the LLC Property. Petrucci Dep. at p. 40, ll. 21-23. 





 23. The property line ran straight from the fence at the rear of the LLC Property to the street, Petrucci Dep. at p. 44, l. 24 - p. 45, l. 1; p. 64, ll. 8-10; p. 73, ll. 7-15, and the Bed was on the Wards' side of that line. Petrucci Dep. at p. 45, ll. 6-7; p. 51, ll. 14- 16. 





 24. Petrucci Landscaping did a spring and fall cleanup of the LLC Property every year between 2003 and 2018. SOMF ¶ 16. 





 25. The spring cleanup was a one-time event, but the fall cleanup usually required five or six visits, every week or two, depending upon the rate at which leaves fell. Videoconference Deposition of Roy Arruda, dated November 12, 2020 ("Arruda Dep.") at p. 28, ll. 2-19. 





 26. According to Mr. Petrucci, Petrucci Landscaping went up to the property line between the LLC Property and the Geiger Property to clean up leaves. Petrucci Dep. at p. 63, ll. 12-13. 





 27. Sometimes employees of Petrucci Landscaping would go a couple of feet onto the Geiger Property during cleanups to blow leaves back toward the LLC Property. SOMF ¶ 37; Arruda Dep. at p. 47, l. 21 - p. 48, l. 4. 





 28. Petrucci Landscaping did not perform any pruning work in the Disputed Area on the side of the Bed closest to the Geiger Property. SOMF ¶ 38. 





 29. Petrucci Landscaping also mowed the grass on the Ward property up to the property line, accessing the Disputed Area through the space between the Bed and the fence along the boundary between the two properties. Petrucci Dep. at p. 68, ll. 12-16; p. 69, ll. 1-14. 





 30. Photographs of the Disputed Area show above-ground roots, from what is presumably a nearby tree, and patches of grass. Verified Complaint, Ex. 2; Bruno Aff., Ex. 3. The photographs also show that, prior to the LLC's recent alteration of the Bed, the Disputed Area could be reached from the remainder of the LLC Property by going on one or both sides of the Bed. Verified Complaint, Ex. 2. [Note 2] 





Analysis 





The Summary Judgment Standard 





 The material facts and the relevant law are largely unchanged since this court issued its decision denying the PI Motion on August 3, 2020. However, the applicable standard to be employed is no longer whether Mr. Geiger has shown a likelihood of success on the merits and irreparable harm outweighing any irreparable harm to the LLC, but whether the "pleadings, depositions, answers to interrogatories, and responses to requests for admission ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the [LLC] is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). "The moving party bears the burden of proving that there are no material issues of fact and that he is entitled to judgment as a matter of law." Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226 , 232 (1997). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). 





 Rule 56 (e) requires that supporting and opposing affidavits "be made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein." In light of these requirements, the court has disregarded those portions of Mr. Geiger's affidavit and the Verified Complaint that are conclusions (that for more than thirty years Mr. Geiger has occupied and maintained, to the exclusion of all others, the Disputed Area, Affidavit Of David R. Geiger, sworn to on January 14, 2021 ("Geiger Aff.") ¶ 3; and that Mr. Geiger has "occupied" the Disputed Area for a period in excess of twenty years, Verified Complaint ¶ 23), are based on hearsay (that at no time during the last thirty years have any of Mr. Geiger's landscaping contractors reported to him that they observed others doing landscaping work in the Disputed Area, Geiger Aff. ¶ 8), or that are hypothetical (what Mr. Geiger would have done if he had become aware of others doing landscaping work within the Disputed Area, Geiger Aff. ¶ 10). Mr. Geiger's statements regarding what he did not observe in the Disputed Area over a thirty year period (Geiger Aff. ¶¶ 6-7, 28) are admitted, although their relevance is limited, Mr. Geiger not having laid a foundation as to the extent of his monitoring of the Disputed Area during that period. See Mass. G. Evid. § 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action."). 





The Applicable Law As Applied To The Undisputed Facts 





 "Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." Lawrence v. Town of Concord, 439 Mass. 416 , 421 (2003), quoting Kendall v. Selvaggio, 413 Mass. 619 , 621-622 (1992), which in turn quotes Ryan v. Stavros, 348 Mass. 251 , 262 (1964). "The burden of proof extends to all of the necessary elements of such possession . . . If any of these elements is left in doubt, the claimant cannot prevail." Holmes v. Johnson, 324 Mass. 450 , 453 (1949), citing Gadreault v. Hillman, 317 Mass. 656 , 661 (1945). Here, the LLC contends both that Mr. Geiger's use was not open and adverse, and that it was not exclusive. In the context of this summary judgment motion, the LLC has the burden of establishing that Mr. Geiger cannot prove these essential elements of his claim. See Correia v. Fagan, 452 Mass. 120 , 129 (2008), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 716 (1991) ("[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if [the moving party] demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case."). 





 "To be 'open,' the use must be without attempted concealment." Boothroyd v. Bogartz, 68 Mass. App. Ct. 40 , 44 (2007). "For a use to be found notorious, it must be sufficiently pronounced so as to be made known, directly or indirectly, to the landowner if he or she maintained a reasonable degree of supervision over the property." Id. "The principle underlying the open and notorious requirements is simply to provide the true owner of the servient estate with constructive notice of adverse use." Halfenger v. Cofield, 2017 Mass. App. Unpub. LEXIS 379 at *4-5, 91 Mass. App. Ct. 1116 (2017) (Rule 23.0 Decision). Accord Lawrence, 439 Mass. at 420, quoting Foot v. Bauman, 333 Mass. 214 , 218 (1955) ("To be open the use must be made without attempted concealment. To be notorious it must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises. It is not necessary that the use be actually known to the owner for it to meet the test of being notorious."). 





 "The extent of openness and notoriety necessary for the acquirement of title by adverse use varies with the character of the land." Martha's Vineyard Land Bank Comm'n v. Taylor, 2018 Mass. App. Unpub. LEXIS 518 at *5, 93 Mass. App. Ct. 1116 (2018) (Rule 23.0 Decision), quoting Tinker v. Bessel, 213 Mass. 74 , 76 (1912). In that regard, Houghton v. Johnson, 71 Mass. App. Ct. 825 , 841 (2008), citing Kilburn v. Adams, 48 Mass. 33 (1843), a case involving open and unenclosed property, is instructive: "because of the difficulty in overseeing or monitoring the use of open and unenclosed land, claimants of adverse rights in such property must show 'some decisive act, indicating a separate and exclusive use, under a claim of right ... open and ostensible, and distinguishable from that of others.'" 





 In this case, Mr. Geiger contends that his lawn maintenance activities, standing alone, suffice as a matter of law to constitute an open and adverse use of the Disputed Area. As recited in Plaintiff's Opposition To Defendant's Motion For Summary Judgment ("the Opposition"), those acts consist of "weekly lawn mowing during the growing season, application of grass seed and fertilizer as needed, application of herbicides, ... fall and spring cleanup of fallen leaves, branches and other debris [and] ... converting some of [the Disputed Area] from grass to a mulch bed." Opposition at p. 5. 





 As he did in support of the PI Motion, Mr. Geiger points to Miller v. Abramson, 95 Mass. App. Ct. 828 , 829 (2019) for the proposition that "mowing, fertilizing, and occasional trimming of trees and shrubs" is sufficient to establish adverse use as a matter of law. The LLC contends, as it did in its opposition to the PI Motion, that, although lawn maintenance has been a factor in finding adverse possession, the cases have generally relied on more than lawn maintenance standing alone, citing Shoer v. Daffe, 337 Mass. 420 (1958); Collins v. Cabral, 348 Mass. 797 (1965) (rescript); and Shaw v. Solari, 8 Mass. App. Ct. 151 (1979). As noted by this court in Mullins v. HD/MW Randolph Ave., LLC, 25 LCR 221 , 224 (2017) (Speicher, J.), "the peculiar characteristics of a particular area, such as its size (usually its rather small size), may render more routine cultivation and maintenance sufficient despite the lack of accompanying structures or major landscape alterations." And, as this court noted in its denial of the PI Motion, in every case reviewed by it, including those cited in Mullins, factors in addition to lawn maintenance supported the adverse possessor's claim. See Shoer, supra (the lawn at issue was enclosed with a privet hedge); Miller v. Abramson, supra (there was "a natural boundary" of trees and shrubs that ran from the rear lot line all the way to the street); Pedonti v. Fantasia, 2011 Mass. App. Unpub. LEXIS 286 (Rule 23.0 Decision) (disputed area was set off by a retaining wall, concrete blocks, a stone pillar and a hedge); Thomas v. DiPinto, 2008 Mass. App. Unpub. LEXIS 352 (Rule 23.0 Decision) (the disputed area was bounded by thick impenetrable brush on one side and a fence or hedge on another); McNeill v. Miller, 2007 Mass. App. Unpub. LEXIS 437 (Rule 23.0 Decision) (the disputed area was set off by a fence); MacDonald v. McGillvary, 35 Mass. App. Ct. 902 (1993) (the disputed area was set off by a fence). 





 Nothing that Mr. Geiger did here constituted a "decisive act, indicating a separate and exclusive use, under a claim of right ... open and ostensible, and distinguishable from that of others." Houghton, supra. Nothing that he did was "sufficiently pronounced so as to be made known, directly or indirectly, to the landowner if he or she maintained a reasonable degree of supervision over the property." Boothroyd, supra. He did not fence the Disputed Area or place any other structures on it, under it or over it, and he did not cultivate it by planting shrubs, trees or flowers, such that the Wards could know that he was claiming their land as his own. To find, on these facts, that Mr. Geiger has established adverse possession would set the threshold for such a claim too low. Such a conclusion would discourage any suburban homeowner from planting a vegetative screen between their lot and their neighbor's for fear of losing ownership of that portion of their lot on the far side of the plantings on such slim facts as these. 





 Accordingly, the court concludes that, on the undisputed facts, Mr. Geiger's use of the Disputed Area, consisting solely of lawn maintenance, was not open and adverse. That conclusion is fatal to Mr. Geiger's claim. See Holmes, supra (claimant carries the burden of proof on all elements of adverse possession). As a separate ground, the court also concludes that Mr. Geiger's use was not exclusive. 





 To be exclusive, "[s]uch use must encompass a 'disseisin' of the record owner. And this means exclusion not only of that owner but of all third persons to the extent that the owner would have excluded them." Peck v. Bigelow, 34 Mass. App. Ct. 551 , 557 (1993) (internal citations omitted). Accord Brandao v. Docanto, 80 Mass. App. Ct. 151 , 158 (2011) ("A claimant's use is 'exclusive' for purposes of establishing title by adverse possession if such use excludes not only the record owner but 'all third persons to the extent that the owner would have excluded them.'"), quoting Peck, supra at 557. "Acts of enclosure or cultivation are evidence of exclusive possession." Labounty v. Vickers, 352 Mass. 337 , 349 (1967). "[A] use or possession which is not adverse to the owner, or which is concurrent with that of others, or which does not exclude a similar use or possession by others, will not confer a title in fee, however long continued." Eastern R.R. Co. v. Allen, 135 Mass. 13 , 16 (1883). 





 The evidence regarding the exclusivity of Mr. Geiger's use of the Disputed Area is also largely unchanged from when this court considered the PI Motion. Mr. Geiger did not fence off or take any other steps that would preclude use of the Disputed Area by others, such as erecting structures or planting trees or shrubs. He did not incorporate the Disputed Area into his irrigation system by placing any portion of his system within its boundaries. And, on this record, others, in the form of the Wards' landscaping service, in fact continued to go on the Disputed Area (and a foot or two onto the Geiger Property) seasonally to undertake the Wards' own lawn maintenance activities, and could do so because of the open area between the Bed and the fence along the boundary line between the Geiger Property and the LLC Property. 





 Mr. Geiger argues, based on Pedonti, supra, that the Wards' landscaping activities were not sufficient to interrupt Mr. Geiger's possession of the Disputed Area. In Pedonti, the property line between the plaintiff and the defendants was marked by a retaining wall, concrete blocks, a stone pillar and a hedge, and the plaintiff and defendants' predecessor in title had "accepted that the ground monuments were the actual boundary line between them" for at least forty years, since at least 1961. Pedonti, 2011 Mass. App. Unpub. LEXIS 286 at *3. When a survey was done in 2007 by the defendants, new owners of their property as of 2001, they discovered that their property line was two and one-half feet onto what the plaintiff and the defendants' predecessor believed was the plaintiff's property. Id. at *1. The plaintiff filed suit to quiet title to the two and one-half foot strip and the trial judge agreed, entering summary judgment for the plaintiff. Id. On appeal, the defendants argued, among other things, that their and their predecessor's entry onto the disputed strip to trim back hedges on defendants' property constituted a joint use of the disputed strip. Id. at *5. The Appeals Court agreed with the trial judge that the plaintiff's allowing the defendants onto the strip to trim hedges "did not suffice to make the plaintiff's use of that portion nonexclusive, because allowing a neighbor to come onto one's land in order to trim overhanging branches is consistent with what a reasonable landowner would allow, and trimming the hedges was not an act 'of dominion by the defendant[s] consistent with [their] title of record.'" Id. at *5-6 (citations omitted). 





 Pedonti is distinguishable from the present case: there was a clearly marked, although erroneously placed, boundary between the two properties that was accepted by both parties as the actual boundary line. The acts of the defendants in trimming hedges did not interrupt the plaintiff's possession of the disputed strip because they were not "acts of dominion by [the defendants] consistent with [their] title of record." Mendonca v. Cities Serv. Oil Co., 354 Mass. 323 , 326 (1968). Here, unlike in Pedonti, there was no disseisin of the Wards by Mr. Geiger such that the burden would fall on the Wards to establish an interruption of Mr. Geiger's possession by acts of dominion. 





Conclusion 





 For the foregoing reasons, the Motion is ALLOWED. Judgment shall enter on Count I of the Verified Complaint declaring that Mr. Geiger has failed to establish title to the Disputed Area by adverse possession. 





 SO ORDERED.





FOOTNOTES
[Note 1] Affidavit Of John Bruno In Opposition To Plaintiff's Motion For Preliminary Injunction And Lis Pendens, sworn to on July 24, 2020 ("Bruno Aff.") ¶ 6 and Ex. 2. 

[Note 2] While Mr. Geiger disputes this description of the photographs in the record, he does not cite to any contrary evidence in the record. Accordingly, pursuant to Rule 4 of the Rules of the Land Court (2005), it is deemed admitted. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.