JOHN BOOTHROYD *vs.* RICHARD S. BOGARTZ.

No. 05-P-1665.

Suffolk. October 3, 2006. - January 4, 2007.

Present: GRASSO, BROWN, & TRAINOR, JJ.

*Easement. Real Property,* Easement.

This court concluded that the plaintiff in a Land Court action had not met his
burden of proving a prescriptive easement over a portion of a particular
locus owned by the defendant, where the plaintiff did not establish that his
use of the locus was notorious, substantially confined to a regular way or
route and continuous in time, over a period of no less than twenty years, as
required. [43-47]

CIVIL ACTION commenced in the Land Court Department on
August 27, 2002.

The case was heard by *Alexander H. Sands,* J.

*Donald R. Pinto, Jr.,* for the defendant.

*John E. Garber* for the plaintiff.

BROWN, J. In 2002, the plaintiff, John Boothroyd (John), com-
menced an action in the Land Court against the defendant,
Richard S. Bogartz, seeking a declaration of their respective
rights as to an easement claimed by John over land owned by
Bogartz in the town of Amherst. See G. L. c. 231A; G. L. c. 185.
This controversy centers on the use of trails or paths by John
that cross in some measure or another through a heavily wooded
four-acre parcel of land (locus) that Bogartz purchased in 1983.[1]

---

[1] In March, 2003, while this case was pending in the Land Court, Bogartz
conveyed the locus to Butternut Properties Limited Partnership (Butternut).
Bogartz maintains, and John does not dispute, that Butternut is controlled by
HAP, Inc., a nonprofit corporation that holds a comprehensive permit from
Amherst under G. L. c. 40B to build twenty-six units of affordable housing on
the locus. John, along with twenty-six other abutters and individuals, chal-
lenged the issuance of the comprehensive permit in Land Court (40B case). In
June, 2005, a judge of the Land Court upheld the issuance of the comprehen-

The parties tried the case before a Land Court judge, who, on the basis of written factual findings, ruled in favor of John, concluding that he had met his burden of proving a prescriptive easement over a portion of the locus.[2] From that adverse judgment, Bogartz appeals.

We reverse the Land Court judgment. On this trial record, there is only one reasonable conclusion to be drawn: John did not establish that the use of the locus was notorious, substantially confined to a regular way or route and continuous in time, over a period of no less than twenty years, as required under our law. John's failure to make such a showing defeats his claim, and it was error for the trial judge to rule otherwise.[3]

*Facts.*[4] On July 24, 1970, John's mother, Phyllis Boothroyd (Phyllis), purchased the property known as 22 Longmeadow Drive in Amherst. Soon thereafter, Phyllis and her three sons — John (age 14), Andrew (age 12), and Peter (age 9) — moved into their newly built home at this address, which abuts the locus. At the time, Phyllis was aware that there were some trails or paths across the locus that could be accessed from her property. The locus was then largely uncultivated land containing mature trees, dense brush, and wild vegetation. Phyllis conveyed 22 Longmeadow Drive to John on September 1, 1998.

A "disputed trail" is depicted on a plan of the locus dated March 15, 2004 (subsequent to the commencement of this lawsuit). The plan was prepared by a licensed professional engineer (James Avery Smith) at the behest of John's trial

---

sive permit. While John's appeal of the 40B case was pending in this court, the Supreme Judicial Court transferred the matter, sua sponte, to its own docket. In the case currently before us, there is no dispute that Bogartz is the properly named defendant.

[2]John also claimed a sewer easement across the locus. The parties settled this claim prior to trial.

[3]Whether the elements of the claim have been satisfied is, in a given case, essentially a factual question for the trial court. See *Kershaw* v. *Zecchini*, 342 Mass. 318, 320 (1961); *Glenn* v. *Poole*, 12 Mass. App. Ct. 292, 293 (1981). Here, the ultimate finding of the judge was not warranted by the evidence admitted at trial.

[4]We take the facts from the trial judge's findings, to the extent that the same are not clearly erroneous, amplified by aspects of the trial record that are not otherwise disputed. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996).

counsel. That said, however, John's own trial testimony makes reference to any number of undefined and unspecified trails, or paths, which appear to some degree or another on the locus; some of the other fact witnesses who had been called by John to testify at trial in support of his claim also referred in general terms to unspecified trails or paths without linking them in any particularized way to the so-called "disputed" or "main" trail.[5]

*Use of locus by John (or others).* Soon after moving to 22 Longmeadow Drive in 1970, John and his two brothers entered upon the locus for recreational purposes, such as walking, rabbit hunting, and riding bicycles.

From 1974 to 1976, John served in the United States Air Force and was stationed in Mississippi and South Carolina. During this period he did not use any part of the locus. During this same time period, Phyllis continued to reside at 22 Longmeadow Drive, but her other sons only did so on a part-time basis.[6] As of 1976, Phyllis acknowledged that both Andrew (then eighteen years of age) as well as Peter (then fifteen years of age) used the trails on the locus less frequently than before, and that "they would just occasionally go back there."

In 1976, upon leaving the military, John returned to live in Amherst.[7] He shared the home at 22 Longmeadow Drive with a few acquaintances. John and his housemates used the trails across the locus in order to walk, ride bicycles, pick wild asparagus and berries, and cross-country ski. (Evidence offered by him at trial was not more specific as to the frequency of his use or particular area of the locus where he pursued these activities.)

In 1980, John moved from 22 Longmeadow Drive to Norwich, Connecticut, where he was employed. For a one-year period, from 1980 to 1981, John returned to 22 Longmeadow Drive on weekends to pick berries and asparagus when in season; otherwise his use of the locus was restricted to walking

---

[5]At different points during the trial testimony there was some confusion (or objection made) whether a particular witness referred to existing trails on the locus, or a network of trails that are said to exist off the locus.

[6]Andrew lived (part-time) with a friend elsewhere in Amherst. Peter lived part-time with his father in Northampton.

[7]At this time John was attending college. Phyllis moved to Cambridge in or about 1978.

or hiking once or twice a month. Notably, John could not recall any specific instance during this one-year time period when he used the so-called main or disputed trail.

In 1981, John returned to Amherst and took up residence at 22 Longmeadow Drive until 1985, when he moved to Greenfield with his future wife. After his marriage in 1987, he continued to live in Greenfield for seven years with his wife and two children.

From 1985 to 1994, Phyllis lived mostly alone at 22 Longmeadow Drive. She made no use of the locus during this period. While he was living in Greenfield, John visited his mother at 22 Longmeadow Drive on the weekends and, at the same time, used the locus for walking, picking berries and wild asparagus (in season), as well as cross-country skiing.

In or about 1993, John moved from Greenfield and returned to the home at 22 Longmeadow Drive; approximately one year later, John's minor son, Jared, joined him. Phyllis continued to live at 22 Longmeadow Drive for another year or two, until she moved to England.

In 1994 or 1995, John widened the so-called main trail on the locus, what was then a "fairly narrow" path, so that Jared could ride a motorized go-cart on the locus. Thereafter, Jared used motorized dirt bikes to travel across a portion of the locus in order to reach adjacent properties. On occasion, John also cleared trees that fell on the trail.

During the years 2000 and 2001, Bogartz twice asked John to prohibit Jared from riding his vehicles on the locus. Subsequently, and apparently without notice to Bogartz, John cleared a new trail along the westerly boundary of the locus. There was evidence that Jared used this new trail to ride his motorized dirt bikes for at least a one-year period. When John filed the underlying Land Court action in 2002, Jared went back to using the main or disputed trail for riding his bikes.[8]

*Discussion.* As codified in G. L. c. 187, § 2, a claimant may

---

[8]Witnesses who were called by Boothroyd to testify at the trial were Sean Wherli (neighbor); Thaddeus Dabrowski (Amherst resident); Andrew Boothroyd (brother); and Daniel St. James (who lived at 22 Longmeadow Drive during the period from 1977 to December, 1980, while attending the University of Massachusetts at Amherst). A transcript of a deposition of Phyllis conducted

be entitled to a prescriptive easement respecting the land of another if it is shown by clear proof of a use of the land in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted over a period of no less than twenty years. See *Tucker* v. *Poch,* 321 Mass. 321, 323 (1947); *Ryan* v. *Stavros,* 348 Mass. 251, 263 (1964); *Glenn* v. *Poole,* 12 Mass. App. Ct. 292, 295 (1981); *Boston Seaman's Friend Soc., Inc.* v. *Rifkin Mgmt., Inc.,* 19 Mass. App. Ct. 248, 251 (1985). John, as the claimant, bears the burden of proof on each and every element mentioned above. He failed to meet his burden in this case.

First, it has not been shown that the use by John (or others in privity with him) was sufficiently "notorious," as that term is understood under our law. "The requirement frequently stated[,] that in order to create a prescriptive right the use must be 'open and notorious[,]' is intended only to secure to the owner [of the affected land] a fair chance of protecting" his or her property interests. *Foot* v. *Bauman,* 333 Mass. 214, 218 (1955). To be "open," the use must be without attempted concealment. Here, Bogartz does not contest this aspect of the evidentiary formula; he does challenge, however, John's contention that the use was "notorious." For a use to be found notorious, it must be sufficiently pronounced so as to be made known, directly or indirectly, to the landowner if he or she maintained a reasonable degree of supervision over the property. See *ibid.* "It is not necessary that the use be actually known to the owner for it to meet the test for being notorious." *Ibid.* It is enough that the use be of such a character that the landowner is deemed to have been put on constructive notice of the adverse use. See *Lawrence* v. *Concord,* 439 Mass. 416, 421-422 (2003) (discussing this element in the context of a claim of adverse possession).[9]

"The extent of openness and notoriety necessary for the acquirement of title by adverse use varies with the character of the land." *Tinker* v. *Bessel,* 213 Mass. 74, 76 (1912). Because

on May 27, 2004, was admitted in evidence; she did not testify at the trial.

[9]The open and notorious element is often discussed in adverse possession cases. A claim of adverse possession requires proof of the additional element of exclusive use, which is not required in a claim of prescriptive easement. See *Lawrence* v. *Concord,* 439 Mass. at 421.

the locus was, from at least the 1980's and up to 2001, thickly wooded land with dense brush that obscured large parts of it, it was incumbent upon John to establish a use, of a degree or character, that would reasonably permit a trier of fact to infer that such a use could have been discovered by a reasonably diligent landowner standing in the shoes of Bogartz. See *Foot* v. *Bauman*, 333 Mass. at 218; *Labounty* v. *Vickers*, 352 Mass. 337, 348-349 (1967). John's proof here did not rise to that level.

Second, John's use of the locus was intermittent and disjointed in time. By his own account offered at trial, his use of the locus was not continuous due to his being away for his military service, his employment in Connecticut, and his decision to reside in Greenfield, both prior to and after his marriage, at least up until 1993. It has long been settled that "[w]hatever breaks the continuity of possession and enjoyment of an easement" has the result of destroying the effect of the prior use. *Pollard* v. *Barnes*, 2 Cush. 191, 199 (1848). This case falls within the scope of that rule, so that the proof has not established a regular and continuous use, without interruption, over a twenty-year period, as required under our law.[10]

Third, John did not meet his burden of establishing that his use of the locus was substantially confined to a regular or specific path or route for which he might acquire an easement of passage by prescription. See *Hoyt* v. *Kennedy*, 170 Mass. 54, 56-57 (1898); *Stone* v. *Perkins*, 59 Mass. App. Ct. 265, 267-268 (2003). The law as to this specific evidentiary element is well-settled. Though this discrete point was sharply contested by the parties, the trial judge glossed over it in rendering his decision on the merits and, in essence, impermissibly filled in the proof pertaining to this element, which was notably lacking, to the advantage of John. It was error to do so.

More than a century ago, the Supreme Judicial Court ruled in *Starkie* v. *Richmond*, 155 Mass. 188, 196 (1892): "A way imports

---

[10]Even if the trial record could be found to have supported a finding that the use by John's other family members (or friends) overcame the break in time between 1974 and 1976, between 1980 and 1981, and between 1985 and 1993, of which we are doubtful, there remains the substantial point raised by the evidence (and the trial judge's own findings) that the passage was over no particular location, which point we discuss *infra*.

a right of passing in a particular line, and not everywhere over the premises over which it is claimed." The Supreme Judicial Court further expanded on this principle in *Hoyt* v. *Kennedy*, 170 Mass. at 56-57, stating:

> "A way imports of necessity a right of passing along a particular route between certain termini. Passing over a tract of land in various directions at different times from year to year not only has no tendency to establish a right over a particular route, but would seem to be inconsistent with such a claim. . . . To establish a way by prescription, the use must be, not only open, adverse, uninterrupted, peaceable, continuous, and under a claim of right, but must be confined substantially to the same route, and to substantially the same purpose for which the way was designed originally, unless the way is one for all purposes."

As we observed recently in *Stone* v. *Perkins, supra* at 268, the above-quoted "principle has not lost its vitality in the more than one hundred years that followed."[11] The judgment cannot be reconciled with this settled principle, and the resulting incompatibility substantially modified the heavy evidentiary burden on John to establish his prescriptive easement claim. The trial evidence, viewed from any perspective, did not show that the use by John (or others in privity with him) had been "confined substantially" to a regular or particular trail or part of the locus. Rather, the evidence showed, at best, a tendency of John (or others, if such persons are considered within this evidentiary calculus) to use different "trails" or paths, as distinguished from the so-called "main" or "disputed" trail that crossed over the locus. Use was made for different recreational purposes.[12] Nor can it be reasonably disputed that the varying uses (walking, berry picking, riding dirt bikes) by John (or others) had been pursued in areas of the locus that were obscured by the trees or dense brush that grew on the land. Based on the

---

[11]See Restatement (Third) of Property (Servitudes) § 2.17 comment h, at 274 (2000) (for purposes of establishing an easement by prescription, "[c]laims for right of way must be based on uses that are substantially confined to a regular route").

[12]"Some latitude" in the variation of the use is permitted. *Lawless* v. *Trumbull*, 343 Mass. 561, 563 (1962).

entire record, a trier of fact would not be warranted in finding or inferring that a reasonably diligent landowner could have known or discovered the uses made of the locus.

We reverse the Land Court judgment entered in favor of John Boothroyd and remand the case to that court for entry of a new judgment in favor of Richard Bogartz. It shall be recited in a new judgment that John Boothroyd has no right to pass over the locus.

*So ordered.*