Coven, J.
On February 10,1964, Israel Arbeiter (“Arbeiter”) granted an easement to the defendants, Robert E. and Shirley A. White (the ‘Whites”), allowing the construction of an underground sewer line that would run from the Whites’ property across and to a point on the plaintiff’s property, then connect to the plaintiff’s sewer line, which, in turn, connected to the City of Newton’s main sewer line. The construction of the sewer line was completed on October 23,1964. By an instrument entitled Abandonment, Release and Dissolution of Easement, dated January 26, 1981, and recorded with the Middlesex South registry of deeds on February 20, 1981, the Whites released their interest in the sewer line; but they have, since the date of the release, continued to use the sewer line. The plaintiff, Fran Rotman, Trustee of the Arbeiter Family Revocable Trust (the ‘Trust”), the present owner of the burdened property, filed this action on February 21,2006 seeking damages and the removal of the Whites’ sewer line. The Whites claimed entitlement to the continued use of the sewer line on the grounds of both a prescriptive easement and by adverse possession. Judgment was entered for the Trust
The easement was granted to permit the Whites to have some connection to the city’s sewer system. The release, by its terms, was signed when the Whites had “direct access to the street sewer line and ... no longer needfed] the use of the existing sewer line” running beneath the Trust’s property. Pursuant to the release, the Whites “irrevocably release[d] ... any and all right, title and interest... and their successors in title, in and to” the easement that had been previously granted.
The trial judge, in findings fully supported by the evidence, determined that sub *103 sequent to the execution of the release, the Trust never took any action to preclude the Whites from using the sewer line. There was testimony, however, from Israel Arbeiter, who has lived at the property now owned by the Trust, was a signatory to the release, and was the only witness at the trial, that after the Whites signed the release, he told them more than twenty times to remove the sewer line. The judge did not make a finding, and the evidence does not reveal, the date on which the earliest of the more than twenty demands was made.
The judge did find that, in the five-to-ten year period prior to the commencement of this action, Arbeiter twice approached the Whites concerning the removal of their sewer line and their direct connection to the city sewer system. On one occasion, Arbeiter had become aware that a neighbor, who was encountering difficulties selling his property because of problems with his cesspool, was connecting to the city sewer system. At another point, Arbeiter saw city workers working on the replacement of the city sewer line. Each time, Arbeiter approached the Whites and suggested that they look into connecting directly to the city sewer line. And each time, the Whites indicated that they would look into it. The judge found that the Whites never indicated to Arbeiter that they refused to terminate their use of file existing sewer connection, and that they actually acknowledged that they would need to connect directly to the city sewer system. They never did so.
Finally, on August 26,2005, counsel for the Trust sent a letter to the Whites informing them that the Trust was terminating their right to use the existing sewer connection, and that, if the connection was not terminated by the end of the month next after the date of the notice, legal action would follow.
The trial judge ruled that the Trust was entitled to rely on the release and that, once the Whites signed the release, they had no adverse or prescriptive rights.
We begin with what this case is not about: adverse possession. “A party claiming title through adverse possession must establish actual, open, exclusive, and non-permissive use for a continuous period of twenty years.” Tolman v. Malloy, 431 Mass. 143, 145 (2000). Once these elements are established, a change in ownership of the property occurs. In this case, while there was apparently exclusive use of that portion of the sewer line running from the Whites’ property to that point on the Trust’s property where the connection to the Whites’ sewer line occurred, there was no exclusive use of the property. The Whites have not cited any case, nor have we found one, in which a court has granted a fee simple interest in the subsurface area occupied by a sewer line.
Rather, this case falls squarely within the claim of a prescriptive sewer easement. “As codified in G.L.C. 187, §2, a claimant may be entitled to a prescriptive easement respecting the land of another if it is shown by clear proof of a use of the land in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted over a period of no less than twenty years.” Boothroyd v. Bogart, 68 Mass. App. Ct. 40, 43-44 (2007).[3] ‘The rule in Massachusetts is that wherever there has been the use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and *104 will be sufficient to establish title by prescription and to authorize the presumption of a grant unless controlled or explained.” Brooks, Gill & Co., Inc. v. Landmark Props., 217 Ltd. Partnership, 23 Mass. App. Ct. 528, 530-531 (1987), quoting Truc v. Field, 269 Mass. 524, 528-529 (1930).
Even though the Whites have continuously used the sewer line from the date of the release, this does not, by itself, advance the claim of a prescriptive easement. The Whites suggest that the twenty-year period began to run at the moment (or perhaps a reasonable time thereafter) the release was signed. We disagree. The character of the sewer line use is such that, at the moment the Whites signed the release, the structure which had other-wise been permitted to exist through a written easement remained. The judge was not required, as matter of law, to make a finding that, at the moment when the release was signed, the Trust had an effective right to begin litigation to have the Whites discontinue the use of the sewer line. The release was made with knowledge that direct city sewer service was then available, and it was not made under the condition that the Whites then had direct sewer service. A finding that, at the moment when the release was signed, there was implied permissive continued use of the sewer line was fully warranted. Implied permissive use rebuts the element of adverse use. Spencer v. Rabidou, 340 Mass. 91, 93 (1959).
Use beginning by permission is presumed to continue, but is rebuttable. MacLeod v. Davis, 290 Mass. 335, 339 (1935). The burden was on the Whites to rebut the presumption. In this case, the evidence did not compel a finding that the Whites met their burden. They presented no evidence, and relied instead on the testimony of Arbeiter. Arbeiter testified that he approached the Whites more than twenty times. There was evidence that, within the twenty-year period measured from the filing of this action, Arbeiter approached the Whites on two occasions and spoke to them about terminating the sewer connection and connecting directly to the city sewer system. On each occasion, the Whites indicated that they would look into connecting directly to the city system. This evidence warranted, but did not require, a finding that the Whites recognized the plaintiffs authority to prevent their continued permissive use. “It is the nonrecognition of such authority at the time a use is made which determines whether it is adverse; and permissive use is inconsistent with adverse use.” Ryan v. Stavros, 348 Mass. 251, 263 (1964).
Whether a party has proved the elements of a prescriptive easement is essentially a factual question. Boothroyd, supra at 41 n.3. Accordingly, because the Whites did not persuade the trial judge that the permissive use established at the time of the signing of the release had been rebutted, we find no error.
Judgment affirmed. Appeal dismissed.
So ordered.

 The only difference in the element of proof between adverse possession and prescriptive easements is that adverse possession requires the element of exclusivity. Boothroyd, supra at 44 n.9.