The defendant trust claims a prescriptive easement across the plaintiff's property. After a bench trial in this declaratory judgment action brought by the plaintiff, a judge of the Land Court found the trust had failed to show that its use of the land was notorious, as is required for establishment of such an easement. We affirm the judgment.
Background. Steamboat Landing[4] (the property) is a remote, undeveloped, cliffside parcel in Aquinnah, on Martha's Vineyard.[5] It is owned by the plaintiff, Martha's Vineyard Land Bank Commission (Land Bank), which acquired it in 2011. The property overlooks the ocean to the north. It is most directly accessible only by a path that connects to various paths and driveways traversing other lots. The property is entirely covered in thick vegetation, except for the single, narrow path that cuts through the property from its southwest corner to the cliff's edge. From the property, a secluded portion of a town-owned beach is accessible by clambering down the rocky cliff-approximately a thirty-foot descent.
Taylor Realty Trust (the trust) owns a parcel of land on Lighthouse Road[6] in Aquinnah. Situated on the trust's land is the Outermost Inn, an inn and restaurant owned and operated by defendant trustees Hugh and Jeanne Taylor (Taylors).[7] Steamboat Landing is less than a ten-minute walk through the woods from the inn. From the time the inn opened for business in 1990 until the date of trial,[8] its paying guests[9] traversed a wooded path from the inn to Steamboat Landing, and then used the path over Steamboat Landing to access the cliff and the beach below it.[10] This use was regular, but minimal and brief-typically consisting of each guest walking across the path to get to the beach in the morning, and returning later in the day.[11]
It only takes a minute or two to cross the entire length of Steamboat Landing and reach the top of the cliff. Persons using the path are not visible from the nearest public and private ways, or from any nearby residence or the inn. Both entrances to the Steamboat Landing path-at the southwest corner of the property and at the top of the cliff-are inconspicuous.[12] The judge found that although the Taylors occasionally trim the edge of the Steamboat Landing path, the trimming is not obvious and does not noticeably change its appearance.[13]
At the crux of this appeal is the trial judge's finding that "a reasonably diligent owner of Steamboat Landing would not have discovered that the Taylors and their guests used the Steamboat Landing path for access to the beach because the character of the land obscured their use."[14]
Discussion. A prescriptive easement is established when there has been "open, notorious, continuous and adverse use for twenty years." Ryan v. Stavros, 348 Mass. 251, 263 (1964). To be notorious, a use "must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises." Lawrence v. Concord, 439 Mass. 416, 420 (2003), quoting from 2 American Law of Property § 8.56 (Casner ed. 1952). "The purpose of the requirement of 'open and notorious' use is to place the true owner 'on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action.' " Lawrence, 439 Mass. at 421, quoting from Ottavia v. Savarese, 338 Mass. 330, 333 (1959). See White v. Hartigan, 464 Mass. 400, 416 (2013) ("to be notorious, the use must put the landowner on constructive notice of the adverse use"); Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 44 (2007).[15]
"The burden of proving every element of an easement by prescription rests entirely" with the party claiming the easement. Rotman v. White, 74 Mass. App. Ct. 586, 589 (2009). "Whether the elements of a claim for a prescriptive easement have been satisfied is essentially a fact question for the trial judge." Denardo v. Stanton, 74 Mass. App. Ct. 358, 363 (2009). See Boothroyd, 68 Mass. at 41 n.3.
Such findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." White, 464 Mass. at 414, quoting from Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). "A finding of fact by the trial judge will not be deemed clearly erroneous unless the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." White, 464 Mass. at 414, quoting from New England Canteen Serv., Inc. v. Ashley, 372 Mass. 671, 675 (1977).
Here, the trial judge found that the seven-room inn has an occupancy rate between eighty-five and ninety per cent from mid-May to mid-October.[16] He also found that during the summer, inn guests typically use the beach below Steamboat Landing at least once per day. Moreover, there was testimony that the Taylors did nothing to hide their guests' use of the Steamboat Landing path, and actively encouraged it. Despite the frequency and openness of the that use, however, the trial judge found it was undetectable to the Land Bank for a number of reasons, including the remoteness of the property, the obscurity of the path itself, the very short length of time it takes to traverse the path across the property, and the fact that use of the path did not appear to alter its appearance in any readily observable way. The judge also found that the beach can be reached by other means and, thus, there is no way to tell whether those using it at any given time arrived via the path across Steamboat Landing. Moreover, he found that although the Taylors have not attempted to conceal the inn's (and their own) use of the path, "they have not made it obvious either."[16]
"The extent of openness and notoriety necessary for the acquirement of title by adverse use varies with the character of the land."[18] Tinker v. Bessel, 213 Mass. 74, 76 (1912). Here, based on all of the evidence, including the remote and overgrown character of the property, the trial judge found the trust's use was not sufficiently notorious to provide notice that would have allowed the Land Bank and its predecessors to vindicate their rights. See White, 464 Mass. at 416. See also Boothroyd, 68 Mass. App. Ct. at 44-45 ("Because the locus was ... thickly wooded land with dense brush that obscured large parts of it, it was incumbent upon John [Boothroyd] to establish a use, of a degree or character, that would reasonably permit a trier of fact to infer that such a use could have been discovered by a reasonably diligent landowner ...").
The judge's subsidiary findings are well supported by the record, which we have carefully reviewed.[19] We see no error in the judge's ultimate finding that the trust's use of Steamboat Landing was not notorious for purposes of a prescriptive easement. In the absence of clear error, we affirm the judgment. See White, 464 Mass. at 414 ; Denardo, 74 Mass. App. Ct. at 363.
Because we affirm based on the trial judge's stated reasoning, we need not consider whether the trust's acquisition of prescriptive rights was foreclosed by operation of G. L. c. 260, §§ 21 and 31, during the time the property was owned by the Land Bank and by its immediate predecessor, the Vineyard Open Land Foundation.
Judgment affirmed.

At the turn of the twentieth century, the Fall River Steamboat Company brought passengers to the beach in front of Steamboat Landing to view the Gay Head cliffs.

"We take the facts from the trial judge's findings, to the extent that the same are not clearly erroneous, amplified by aspects of the trial record that are not otherwise disputed." Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 41 n.4 (2007).

Lighthouse Road has also been referred to as Lobsterville Road. To the extent there is a distinction between Lighthouse and Lobsterville Roads, it is not relevant to this decision.

The Taylors are two of the trust's trustees and are also its beneficiaries.

In 2013, the Land Bank posted a notice pursuant to G. L. c. 187, § 3, ending the period in which a prescriptive easement could have been acquired. See White v. Hartigan, 464 Mass. 400, 415, 417-418 (2013).

Although the evidence submitted at trial included testimony regarding personal use of the path by the Taylors and their family and guests, the parties do not seem to dispute that the prescriptive period for obtaining an easement encompassing the trust's commercial use began when the inn opened for business in 1990. See Tinker v. Bessel, 213 Mass. 74, 76 (1912), quoting from Middlesex Co. v. Lowell, 149 Mass. 509, 511 (1889) ("It is the general rule that 'prescriptive rights are measured by the extent of the actual adverse use of the servient property' "). We omit here facts related to the Taylors' pre- and post-1990 personal use of the path because such use was plainly even less notorious than the use by inn guests. Although our discussion infra focuses on commercial use of the path, we affirm the judgment insofar as it declares that neither the trust nor the Taylors hold an easement for personal use.

The trust's parcel does not directly abut Steamboat Landing. The path from the inn to Steamboat Landing crosses five other parcels. The only portion of the path to the beach at issue here, however, is the section that traverses Steamboat Landing.

The Land Bank initiated this action, seeking a declaration that the Taylors and their invitees (including inn guests) have no right to use the path and also an injunction barring such use.

The judge took a view after the conclusion of the trial. "A view is not technically evidence and subject to all the principles applicable to evidence in the technical sense." Berlandi v. Commonwealth, 314 Mass. 424, 451 (1943). Nevertheless, "it has been said that it inevitably has the effect of evidence, and information properly acquired upon a view 'may properly be treated as evidence in the case.' " Ibid., quoting from Keeney v. Ciborowski, 304 Mass. 371, 372 (1939) (internal citations omitted).

The judge wrote that although the Taylors' son, Isaac, testified that he works on the Steamboat Landing path once every week or two during the growing season, "I do not believe that he has ever done anything more than minor trimming, with no noticeable effect. He certainly has not done anything that would alert the path's owners, the Land Bank, that work was being done." Moreover, the judge wrote, "[a]s I observed while on my view, the brush that surrounds the Steamboat Landing path is so overgrown that I do not find it credible that Isaac, the Taylors, or anyone on their behalf did anything more than sporadic trimming there, if that. To the extent that they did any work to the Steamboat Landing path, the area is so remote and obscured, and the work done so minor, that no one would have noticed."

The judge also wrote that use of the path by the Taylors and guests of the inn was "effectively undetectable, and thus not notorious as the law requires."

"Because the requirement of open and notorious use 'is intended only to secure to the owner a fair chance of protecting himself,' a property owner's actual knowledge of a claimant's adverse use of the property satisfies this element." White, 464 Mass. at 417 (citation omitted). See Rotman v. White, 74 Mass. App. Ct. 586, 589 (2009). We are aware that in 2010, prior to its acquisition of Steamboat Landing, the Land Bank became aware of the trust's use of the path. This fact alone, however, sheds no light on whether or when any predecessor owner possessed such knowledge between 1990 and 2010.

The inn is closed for the remainder of the year.

Adverse possession requires the additional element of exclusivity; otherwise, it shares the same elements as prescriptive easement. Boothroyd, 68 Mass. App. Ct. at 44 n.9.

The trust quarrels with the judge's finding that the Land Bank and its predecessors gave permission to local residents to use the path, which was relevant to his further determination that the inn guests were indistinguishable from those residents who used the parcel permissively. We need not reach the question of whether the evidence supported the inference that use by local residents was permissive (cf. Houghton v. Johnson, 71 Mass. App. Ct. 825, 842-843 [2008] ) because the judge's numerous additional findings supported his conclusion even in the absence of such permissive use by non-invitees of the Taylors.