OLD COLONY HISTORICAL SOCIETY vs. TAUNTON CHURCH GREEN REALTY, LLC, MISC 18-000127

































 
 OLD COLONY HISTORICAL SOCIETY, Plaintiff, v. TAUNTON CHURCH GREEN REALTY, LLC, Defendant
 MISC 18-000127 
 JULY 7, 2021
BRISTOL, ss.
VHAY, J.
FURTHER FINDINGS OF FACT AND CONCLUSIONS OF LAW (Rule 52(a), Mass. R. Civ. P.)














 Plaintiff Old Colony Historical Society owns property at 66 Church Green in Taunton, Massachusetts. (Church Green is the full name of a street in Taunton.) The property is the site of the Old Colony History Museum. Located directly behind the Museum property are two abutting lots - Assessors' Lots 66-424 and 66-426 - both owned by defendant Taunton Church Green Realty, LLC ("TCGR"). Lot 66-424 is known as 68 Church Green. It's accessible from Church Green via a 40-foot right of way (the "Right of Way") that runs along one side of 66 Church Green and ends at 68 Church Green. No part of the Right of Way crosses any property other than 66 Church Green. 





 This case, filed in February 2018, originally presented three questions: (1) whether TCGR has a deeded right to use the Right of Way to access not only 68 Church Green, but also Lot 66-426 (and if not, whether TCGR has acquired such rights by prescription); (2) whether Old Colony has narrowed the Right of Way by prescription; and (3) whether TCGR has the right to construct a sidewalk along the Way, if a permitting authority ever requires TCGR to do so. (TCGR hopes to redevelop its properties, which were vacant as of 2019.) After a trial that included a view, this Court entered judgment largely in favor of TCGR in February 2019. See Old Colony Hist. Soc. v. Taunton Church Green Realty, LLC, 27 LCR 81 (2019) ("Old Colony I"). The Court concluded that, by virtue of its deed to 68 Church Green, TCGR enjoyed the right to use the Right of Way to access Lot 66-426 if such access is incidental to activities on 68 Church Green. See id. at 83-84. The Court thus declined to reach the issue of whether TCGR acquired access rights by prescription. The Court further held that (a) TCGR hadn't obtained by prescription the right to have Museum patrons and those parking for "City events" use the Right of Way to park on Lot 66-426; (b) Old Colony hadn't narrowed by prescription TCGR's rights to use the Right of Way; and (c) TCGR had the right to build a sidewalk along the Right of Way if permitting authorities so required. See id. at 84-85. 





 Old Colony appealed Old Colony I. In December 2020, the Appeals Court vacated the part of this Court's judgment that declared that TCGR enjoyed a deeded right to use the Right of Way to access Lot 66-426. See Old Colony Historical Society v. Taunton Church Green Realty, LLC, 99 Mass. App. Ct. 1102 (2020) (Rule 23.0 decision). The Appeals Court remanded the case to this Court for consideration of TCGR's other theory of why it enjoyed such rights: that it had acquired them by prescription. The Appeals Court affirmed Old Colony I in all other respects. 





 On remand, the parties agree that they provided during the 2019 trial all their evidence pertaining to TCGR's alleged prescriptive rights. They also agreed to resubmit the case to this Court based solely on the transcript of the 2019 trial, the 2019 exhibits, and supplemental briefs. The parties also waived additional oral argument.





 Having reviewed the foregoing materials, the parties' stipulations of fact, and recalling the Court's 2019 view of the parties' properties, the Court finds the facts that follow. Many are substantially identical to those described in Old Colony I, but the Court has omitted findings from Old Colony I that aren't material to this remand decision. The parties shouldn't interpret any such omission as a decision by this Court to overrule or vacate the omitted findings.) 





 1. In 1925, the owner of 66 Church Green was the Trustees of Bristol Academy (despite the plural name, it was a corporation). At that time, the 66 Church Green parcel (which is roughly rectangular, with its longest axis running southwest/northeast) was double its present size. A street called Church Green abuts the northwest side of 66 Church Green. 





 2. In October 1925, the Trustees asked a surveyor to prepare a plan (the "1925 Plan") showing a division of their property. The 1925 Plan detailed a front parcel (today's 66 Church Green) and a back parcel, today's 68 Church Green. The 1925 Plan also showed a 40-foot-wide "Right of Way" running along the southwest edge of the front parcel from its beginning at Church Green and ending at the back parcel. 





 3. In February 1926, the Trustees sold to Harry Carlow the back parcel, by deed (the "Carlow Deed"). The Appeals Court has held that the Carlow Deed granted access over the Right of Way only for the benefit of the back parcel, now 68 Church Green. 





 4. In May 1926, the Trustees sold to Old Colony what's now 66 Church Green. A single 19th-century building occupies 66 Church Green. It houses the Old Colony History Museum and the Society's offices. 





 5. In 1958, Mr. Carlow's widow sold 68 Church Green to Medical Arts Building, Inc. The 1958 deed mentions "buildings" on 68 Church Green. At the time of trial, there was an unoccupied building complex on 68 Church Green. The complex, called the Medical Arts Building, was shaped like a backwards "C." There was testimony at trial that part of the complex dates from the American Civil War. 





 6. In 1959, Medical Arts Building, Inc. agreed to impose two restrictions on 68 Church Green for the benefit of eight nearby properties. The benefited properties don't include 66 Church Green. One restriction prohibits use of 68 Church Green by any "business or commercial use. . . other than the use for a maximum of twelve doctors' offices. . . ." 





 7. The Medical Arts Building is a single-story structure, largely wood-framed. It was used solely as doctors' offices until approximately 2000, when Community Counseling of Bristol County, Inc., began leasing parts of the complex. 





 8. A portion of the northeast side of the Medical Arts Building, the part of the complex that allegedly dates from the Civil War, lies on 68 Church Green's northeast boundary. In August 1960, Medical Arts Building, Inc. purchased from its neighbors Menahem and Frances Cooperstein a nearly rectangular lot, what this decision and the City of Taunton's tax assessors call Lot 66-426. Lot 66-426 abuts 68 Church Green to the northeast. The Coopersteins cleaved Lot 66-426 from a residential property that bounded on Church Green. They divided the property specifically for "Medical Arts, Inc.," which subsequent buyers and sellers of Lot 66-426 property treated as a pseudonym for Medical Arts Building, Inc. The Coopersteins' deed to Medical Arts, Inc. conveying Lot 66-426 (the "1960 Deed") doesn't identify any access to that lot. 





 9. At the time of trial, fences stretched along the northeast, northwest (abutting the remainder of what used to be the Cooperstein property), and southeast sides of Lot 66-426. The southwest side of Lot 66-426, the entirety of which abuts the northeast side of 68 Church Green, was unfenced at the time of trial, and showed no signs of ever having been fenced. 





 10. Lot 66-426 was completely paved at the time of trial. Approximately 40 feet of that paving, on the west corner of Lot 66-426, connects with a similarly paved area on 68 Church Green, and forms a large, continuous, open-air parking lot that surrounds the Medical Arts Building on its west, northwest, north and northeast sides. The paved areas on Lot 66-426 connect to paved accessways that encircle the Medical Arts Building. 





 11. At the time of trial, Lot 66-426 showed no signs of having hosted buildings or other permanent structures, with one exception: a porch and a single stairway extended from the elevated northeast side of the Medical Arts Building (from what was described at trial as "Dr. Parker's Private Entrance") and ended at grade on Lot 66-426. The trees growing on Lot 66-426 at the time of trial were mostly along the fenced edges of the lot. 





 12. Medical Arts Building, Inc. came to own 68 Church Green and Lot 66-426 through two separate deeds. In 1984, Medical Arts Building, Inc. sold both lots via one deed. By the time of trial, there had been seven conveyances of 68 Church Green and Lot 66-426 following the 1984 conveyance. Each time, both lots were conveyed together. The last such conveyance prior to trial, a sale to TCGR, occurred in June 2011. 





 13. No party presented eyewitness testimony concerning Lot 66-426's uses prior to 1984. TCGR did provide eyewitness testimony on uses from pediatrician Dr. Goverhdhani Ohri. He began working in the Building in July 1984, and stopped seeing patients there in August 2015. As of 1984, the footprint of the Building was identical to its footprint as of the time of trial. As of 1984, and continuing to the time of trial, the only way drivers could reach Lot 66- 426 was by entering 68 Church Green via the Right of Way, then crossing 68 Church Green's parking lot. Persons occupying 66 Church Green have a clear and unobstructed view of the route described in this Finding. 





 14. While operating his practice in the Medical Arts Building, Dr. Ohri saw as many as 50 patients a day, Mondays through Friday, between the hours of 9:00 AM and 5:00 PM. He also saw patients on call over a regular schedule of weekends. When he first arrived at the Building in 1984, the Building housed the practices of ten to twelve doctors. 





 15. The Medical Arts Building has several private entrances along most of the sides of the Building. Doctors and staff for the offices located on the side of the Building that's closest to Lot 66-426 parked right outside those entrances - on Lot 66-426 - to have direct access to their offices. 





 16. Since 1984, Lot 66-426 has been used for these purposes: (a) as the location of the stairway to Dr. Parker's Private Entrance; (b) parking for owners or tenants of the Medical Arts Building, and their employees, patients and visitors; (c) connecting the paved areas surrounding the Building, and providing access to the Building itself, for the use of the Building's owners, tenants, employees, patients, visitors, prospective purchasers and developers, vendors, delivery personnel, heating-oil suppliers, and utility companies; and (d) as the location for dumpsters used in the connection with the Building's operations (that use ceased in 2014). 





 17. The uses noted in Finding #16 were obvious during daylight hours to anyone occupying 66 Church Green. At the time of trial, the Old Colony History Museum was staffed Tuesday through Saturday, between 9 AM and 4 or 5 PM - hours that overlapped with the work conducted at the Medical Arts Building and the uses described in Finding #16. The Museum is open to the public those same days, from 10 AM to 4 PM. Starting in 1971, Dr. William Hanna, Old Colony' s president at the time of trial, frequently did research at the Museum and was there "five, six days a week." He was able to observe the "parking situation" at the Museum and surrounding properties, including TCGR's properties. He testified that he "occasionally" has seen those attending special events at the Museum park on TCGR's property. He also testified that he "frequently" saw other cars on TCGR's lot "over here against the fence, but - as you did this morning, but they're not from - from us." The Court infers from this testimony (as well as the Court's own view of the properties) that persons occupying 66 Church Green could see, from 66 Church Green, vehicles parked on 68 Church Green and Lot 66-426. 





 18. At the time of trial, the Right of Way was fully paved, from Church Green to 68 Church Green. A line of telephone piles stretched along the southwest side of the Way. The entire Way was visible from 66 Church Green. Large portions of Lot 66-426 also are visible from 66 Church Green and the Right of Way, including the areas subject to the uses of Lot 66- 426 described above. 





 19. The Medical Arts Building's last tenant, a doctor, vacated the Building in 2016. Between 2016 and the time of trial, TCGR continued to use (or allowed the use of) Lot 66-426, albeit less frequently than before, and only for some of the uses described in Finding #16 above. TCGR and its invitees have reached Lot 66-426 by the route described in Finding #13 above. Those uses were open and obvious to anyone occupying 66 Church Green. 





*.*.* 





 The parties agree that it's TCGR's burden to prove it has acquired an easement by prescription over the Right of Way for the benefit of Lot 66-426. See, for example, Rotman v. White, 74 Mass. App. Ct. 586 , 589 (2009). It's thus up to TCGR to show by "'clear proof . . . use of the [disputed] land in a manner that has been (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted for a period of no less than twenty years." Smaland Beach Ass'n, Inc. v. Genova, 94 Mass. App. Ct. 106 , 114 (2018), quoting Boothroyd v. Bogartz, 68 Mass. App. Ct. 40 , 44 (2007). See also G.L. c. 187, § 2; White v. Hartigan, 464 Mass. 400 , 413-414 (2013). "To be 'open,' the use must be without attempted concealment." Boothroyd, 68 Mass. App. Ct. at 44. "For a use to be notorious, it must be sufficiently pronounced as to be made known, directly or indirectly, to the landowner if he or she maintained a reasonable degree of supervision over the property." Id. 





 From (a) the age of the Medical Arts Building, (b) the 1960 Deed (especially its omission of any mention of access); (c) what Medical Arts Building, Inc. owned at the time of the 1960 Deed; (d) the physical location of 68 Church Green and Lot 66-426 (including their extensive shared and open boundary); (e) the extent and size of the paved area on Lot 66-426; (f) the apparent age, condition and position of the porch and stairway described in Finding #11; (g) the absence of any sign of structures on Lot 66-426, other than those described in Finding #11; (h) the apparent age of the trees and other vegetation surrounding (but largely not within) Lot 66-426; (i) the common ownership of 68 Church Green and Lot 66-426 since 1960, and (j) Dr. Ohri's testimony, the Court holds that continuously from sometime in 1960 through at least 2016, Lot 66-426 has been used as (1) the location of the stairway to Dr. Parker's Private Entrance; (2) parking for owners and tenants of the Medical Arts Building, and their employees, patients and visitors; and (3) a means of connecting the paved areas surrounding the Building, and providing access to the Building itself, for the use of the Building's owners, tenants, employees, patients, visitors, prospective purchasers and developers, vendors, delivery personnel, heating-oil suppliers, and utility companies. The Court holds that TCGR and its post 1960 predecessors in interest to 68 Church Green (the "Users") have used the Right of Way openly and continuously between 1960 and 2016, without interruption, to reach Lot 66-426. The Court further holds that anyone occupying 66 Church Green, if they reasonably supervised the Right of Way's use, could have seen during that same period vehicles travelling the Right of Way and ending their journey on Lot 66-426. Those vehicles had no way of reaching Lot 66-426 apart from using, first, the Right of Way and, second, 68 Church Green. 





 The Court could not hold in Old Colony I that such uses were "adverse" to Old Colony. That's because the Court held that the Users had a deeded right (as the owners of 68 Church Green) to use the Right of Way to reach Lot 66-426 for purposes incidental to the use of 68 Church Green. Consequently, such uses weren't adverse to Old Colony. The Appeals Court has concluded otherwise. This Court thus holds now that the Users' use of the Right of Way as access to Lot 66-426 was adverse the day such use began (in or shortly after 1960) and continued through 2016. If that were not enough, the Users' continuous, open and notorious use of the Right of Way to reach Lot 66-426 creates under Massachusetts law a presumption that the use was in fact adverse. See Tucker v. Poch, 321 Mass. 321 , 323-324 (1947); Houghton v. Johnson, 71 Mass. App. Ct. 825 , 835-836 (2008). Old Colony presented no evidence that it gave to the Users permission to use the Right of Way to reach Lot 66-426. 





 Old Colony cites to several cases - among them Kilburn v. Adams, 48 Mass. (7 Met.) 33 (1843); Sprow v. Boston & Albany R.R., 163 Mass. 330 (1985); and Houghton, 71 Mass. App. Ct. 825 - for the proposition that since the Users could by deed use the Right of Way for access to 68 Church Green, TCGR can't prove adverse use solely by proving that vehicles continuously traveled the Right of Way. This Court addressed the identical issue in Dugan v. Boutiette, 26 LCR 314 (2018) (Vhay, J.). There the Court agreed that when a plaintiff claims to have acquired by adverse possession rights in lands over which the plaintiff already holds the dominant estate in an easement, the plaintiff must "prove something extra, so as to put the owner [of the servient estate] on notice that [the plaintiff] was using the owner's lands for purposes other than those the owner had authorized." Id. at 317. The Court further held that the plaintiff might have to provide greater proof of unauthorized use if, owing to the nature of the land over which plaintiff claimed prescriptive rights, it would be difficult for the defendant to distinguish authorized from unauthorized uses. Id. at 318. 





 Like the prevailing plaintiffs in Dugan, TCGR has provided sufficient proof of obvious, unauthorized use of the Right of Way to overcome the Kilburn/Sprow/Houghton doctrine. As it passes through 66 Church Green, the Right of Way is only 40 feet wide, and paved. It's not the sort of open, unenclosed land at issue in both Kilburn and Houghton: in this case, all unauthorized travel has occurred in a confined space. See Dugan, 26 LCR at 318 (suggesting that Kilburn and Houghton principles may apply to "open and unenclosed lands" only). Further, like the losing defendants in Dugan, at all times relevant to this case, Old Colony occupied a fixed location, its building at 66 Church Green. From their offices, Old Colony personnel (if they wished) could monitor use of the Way and observe where vehicles entering 68 Church Green from the Way went. (Dugan, 26 LCR at 318, notes by contrast that the defendant in Sprow, the Boston & Albany Railroad, had no ability to monitor private versus public use of a disputed railroad crossing, as B&A personnel observed the crossing only from passing trains.) 





 Old Colony personnel could have detected with little effort between 1960 and 2016 that many cars using the Right of Way - whether their owners were medical personnel, their patients, patients' families, vendors, or suppliers -- ended their journey on Lot 66-426. Moreover, since (a) Lot 66-426 lacked at all times between 1960 and 2016 any access to a public way other than by crossing 68 Church Green, and (b) as 68 Church Green in turn had no access to a public way other than by the Right of Way, persons occupying Old Colony's property reasonably should have concluded at the moment they started seeing cars on Lot 66-426 that their drivers were making unauthorized use of the Right of Way, whether Museum personnel had actually followed the route of those cars from Church Green to Lot 66-426 or not. 





 The Court thus holds that TCGR and its successors in interest to Lot 66-426 have acquired by prescription the right to use the Right of Way for access and egress to and from Lot 66-426. Judgment on remand to enter accordingly. 






 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.