NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1426

40 MEADOWBROOK LANE REALTY LLC

vs.

KYLE ANDRESS & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, 40 Meadowbrook Lane Realty LLC (Meadowbrook), and the defendants, Kyle Andress and his father, Gary Andress (hereinafter Andresses), own abutting properties in the town of Norton. Meadowbrook purchased its property in November 2018 and leases it to Lincoln Meadows Farm, a limited liability company owned by Melissa Doucette. Doucette lives on the property and also operates an equine boarding facility and riding school there. The Andresses purchased their property, which consists of a large tract of undeveloped land, approximately four months later in March 2019. Access to the

_____

[1] Gary Andress.

Andresses' property is by a private right of way known as Pine Needle Lane (lane). The lane is a narrow dirt road which runs along the western boundary of Meadowbrook's property and proceeds north over the Andresses' property.[2] Doucette's students and other horseback riders use the lane for horseback riding. They also use two trails known as the Horse Farm Loop trail and the Crane Street trail (trails), portions of which are located on the Andresses' land.

The Andresses plan to build two homes on their property and make improvements to the lane, including widening and paving it, to do so.[3] The parties soon realized they had conflicting views regarding the boundaries of their properties, ownership thereof, and rights to use the lane and the trails.[4] The dispute became

---

[2] More specifically, the lane leads northerly from another private way, Meadowbrook Lane, across a portion of Meadowbrook's land along its western boundary and then onto the Andresses' land.

[3] As set forth in their counterclaim, the construction of two homes will require improvements to the lane consisting of "constructing a compacted gravel roadway together with requisite appurtenances (i.e. minimum width, minor drainage control components, utilities, etc.) so as to provide adequate vehicular access" to the property.

[4] Doucette initially believed that she owned the land on which the trails are located. The judge, however, found that the trails encroach upon the Andresses' property in three places.

acrimonious when the parties blocked each other's access to both the lane and the trails.[5]

Ultimately, Meadowbrook commenced this action seeking, among other things, a preliminary injunction prohibiting the Andresses from improving the lane in any manner that would be detrimental to the "wellbeing of horses that customarily use [it]." The Andresses then filed counterclaims (and an amended counterclaim) seeking a declaratory judgment and injunctive relief as regards their right to improve the lane. They also sought to establish the location of the boundary line between Meadowbrook's northern boundary and their southern boundary, as well as to quiet title to approximately 3.67 acres (disputed area) located along that same boundary line.[6]

Following a jury-waived trial, a judge of the Superior Court determined that Meadowbrook has a prescriptive easement over the Andresses' property "in the area of [the trails] for all such land uses, including the riding of horses."[7] With

_____

[5] The judge found that "[u]pon [the Andresses] blocking access to Doucette and her customers along the horse farm loop trail, Doucette blocked [the Andresses'] access to Pine Needle Lane."

[6] Meadowbrook and the Andresses also brought trespass claims against each other. These claims were dismissed by agreement prior to trial and are not before us.

[7] The judgment also required the Andresses to remove "signage, trail cameras, and/or alarms previously placed along the prescriptive easement."

respect to the lane, the judge concluded that Meadowbrook has a thirty foot right of way along the entire length of the lane. The judge also found that the Andresses have a right of way on the lane "for travel only to access their land" and specified that the Andresses do "not have the right . . . to widen, change the topography, install conduits, pipes, poles, or any other instrumentalities needed in connection with utilities." In addition, the judge permanently enjoined the Andresses from interfering with Meadowbrook's continued use of the lane and the trails. Lastly, the judge concluded that the Andresses had not sustained their burden of establishing the northern/southern boundary line between the properties or to quiet title to the disputed area. This appeal ensued.

The Andresses contend that the judge erred in concluding that Meadowbrook had acquired an easement by prescription over the trails for two reasons. First, they assert that the judge should not have considered the issue in the first place because the pleadings did not adequately raise it. Second, the Andresses argue that, in any event, Meadowbrook failed to establish two elements of a prescriptive easement: that its use of the trails for horseback riding was for the requisite time period and that its use was "adverse" to the Andresses' property rights. In addition, they argue that the judge (1) improperly precluded them from improving the lane where they had a deeded

4

right to do so and G. L. c. 187, § 5 authorizes such improvements by implication; (2) erred in failing to establish the "north/south boundary between the parties' land;" and (3) abused her discretion by permitting Doucette to testify about the type of road surface that would be harmful to horses.

For the reasons discussed below, we remand the case only to modify the amended judgment to the extent it prohibits the Andresses from making any improvements to the lane including those that would not be detrimental to its current use by horses. The remainder of the amended judgment is affirmed.

Background. The history of the ownership of the two properties and the use of the properties by the parties' predecessors and others are set forth in detail in the judge's findings of fact and rulings of law. We need not summarize that history here. Instead, we refer to those facts which are relevant to our analysis during our discussion of the issues raised on appeal.

1. The prescriptive easement claim. As noted, the Andresses challenge the judge's conclusion that Meadowbrook had established an easement by prescription over the trails located on their property. We first address the Andresses' argument that they had no notice of the claim because the pleadings did not adequately raise the issue.

5

Although it is true that Meadowbrook's complaint does not allege that a prescriptive easement exists, we discern no reasonable basis for concluding that the Andresses were taken by surprise at trial or unfairly prejudiced by the admission of evidence relating to whether a prescriptive easement had been established. The Andresses filed an amended counterclaim in which they sought to quiet title to the land on which the trails are partially located, and asserted that Meadowbrook "has no right, title, or interest" therein. Accordingly, the Andresses should have been on notice that the challenged evidence would be forthcoming to rebut that claim. And, in fact, there was at least some notice. The parties specifically referred to this issue in their joint pretrial memorandum. Under the section entitled "Parties' Statement of the Case," the parties acknowledged "[t]o the extent that parts of those trails are on the [Andresses'] property, 40 Meadowbrook has acquired a prescriptive easement over them." We recognize that the parties anticipated that Meadowbrook would move to amend the complaint to add a prescriptive easement claim.[8] However, Meadowbrook's

_____

[8] Footnote one to the parties' joint pretrial memorandum states that "Meadowbrook intends to move to amend the [c]omplaint to add that prescriptive easement claim." The joint pretrial memorandum further states that the Andresses would oppose a motion to amend the complaint to add a prescriptive easement claim not because it would be unreasonable to do so but because such an amendment would be "futile" and fail as a matter

6

failure to do so was not a fatal error.  To the contrary, while an amendment to the complaint or a motion to amend the pleadings to conform to the evidence would have been appropriate, the failure to do either "does not affect the result of the trial of these issues."  K.G.M. Custom Homes, Inc. v. Prosky, 468 Mass. 247, 257 (2014) (holding Mass. R. Civ. P. 15 [b] does not require parties to amend pleadings); see also Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974).

In addition, we note that the issue was addressed throughout the trial, starting with Meadowbrook's opening statement in which counsel claimed that Meadowbrook had acquired a prescriptive easement.  Although counsel for the Andresses' objected, they did not ask for a continuance or insist that the complaint be amended.  Furthermore, each time the Andresses objected to evidence relating to the establishment of a prescriptive easement during the trial, Meadowbrook's counsel responded by asserting that the issue had been properly raised based on the Andresses' counterclaim and also in the parties' pretrial memorandum.  In fact, at one point, in response to the Andresses' continued objections, the judge stated,

> "It's mentioned.  We've already been through this. . . .
> I'm going to listen to the evidence.  You can argue all you
> want when we have our conference at the end on findings and

_____

of law because Meadowbrook could not establish "continuous and uninterrupted use of said trails."

7

rulings.  I'm happy to hear it at that point in time.  The evidence will be coming in.  Your objection is noted for the record."

The issue was raised again in the Andresses' motion to correct the judgment.  When the motion was addressed, they asserted that the prescriptive easement issue had not been properly raised to which the judge responded,

"Then why did we have those . . . two neighbors that you sufficiently cross-examined?  You cross-examined them all on issues as to how long they had lived there, what they knew in terms of the usage of the property and whatever else.  And, certainly, they were listed in . . . the memoranda, very well-disclosed long ago.  What did you think they were being called to trial for?"

Lastly, the judge did not abuse her discretion in admitting evidence in support of the prescriptive easement claim.  Such evidence was relevant to rebut the Andresses' claim that Meadowbrook had no right, title, or interest in the trails at issue.  It was also relevant to the Andresses' claim that Meadowbrook's use of the trails was permissive.

We now turn to the Andresses' claim that the judge erred in finding that Meadowbrook had established use of the trails for horseback riding for the requisite time period and that such use was "adverse" to the Andresses' property rights.

"An easement by prescription is acquired by the (1) continuous and uninterrupted, (2) open and notorious, and (3) adverse use of another's land (4) for a period of not less than twenty years."  White v. Hartigan, 464 Mass. 400, 413 (2013).

Unlike adverse possession, exclusive use of the land is not an element.  See Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 44 n.9 (2007).  Although, as will be discussed below, the judge found that the Andresses had not established the exact location of their southern boundary, she was able to determine that portions of the trails that Meadowbrook's customers and guests use for horseback riding encroach on the Andresses' property in three places.  She further concluded that use of the trails in their current location dates back to the 1970s, thereby exceeding the twenty-year requirement.  In reaching this conclusion, the judge credited and subsequently relied on the testimony of Ted Marvel, an abutter who grew up on Meadowbrook Lane and testified that he and others used the trails for various forms of recreation since he was a child.  The judge also credited the testimony of Doucette and the prior immediate title owner of the Meadowbrook property, Albert Reed.  Like Doucette, Reed operated a horse farm on the property which he purchased in 2004.  He too used the trails and observed guests of the horse farm using the trails.

The Andresses argue that the testimony on which the judge relied to conclude that the trails had been used for horseback riding for over twenty years was insufficient because the witnesses (Marvel and Reed) testified that other neighbors also used the trails.  This argument fails.  As noted, exclusive

9

possession is not required for a prescriptive easement. See Boothroyd, 68 Mass. App. Ct. at 44 n.9.

The Andresses also assert that any use of the trails at issue was permissive, thereby defeating the establishment of a prescriptive easement. In support of this assertion they point to a "Revocation of License" recorded in 2019 by Morna and William Bucklin, the Andresses' predecessors in title, which purported to revoke "all rights and permission previously granted to the Lincoln Meadows Horse Farm located at 40 Meadowbrook Lane, its owners employees and clients relative to all purposes including access for hiking and walking or riding of horses on [the Andresses' property]." The judge properly rejected this argument after concluding that there was no evidence that the Bucklins had first granted permission or a license to Meadowbrook or its predecessors to use their property for purposes of horseback riding. In other words, the judge reasoned that because there was no license to revoke, the recorded revocation did not amount to proof of preexisting permission.

Based on the foregoing, we conclude that the judge's finding that Meadowbrook and its predecessors used the trails for over twenty years without the permission of the Andresses' predecessors was amply supported by the evidence. Accordingly, there was no error in the conclusion that Meadowbrook has

10

acquired an easement by prescription over those portions of the trails that encroach on the Andresses' property.

3. <u>The northern/southern boundary</u>. The judge concluded that the Andresses had not met their burden of establishing the location of their southern boundary. They argue that they did so based on the fact that the description of the southern boundary within multiple deeds of their chain of title did not materially change over the years whereas the description of Meadowbrook's northern border did change. That the description of the boundaries of the Andresses' property did not change over the course of time may well be true, but here the judge properly relied on the opinion of Meadowbrook's surveyor Robert Babcock, the only surveyor to testify at trial. He explained that the northern/southern boundary between the properties is "very confusing," that "there are no original monuments out [there]," and the "line fluctuates." He testified that he "attempted to put [the boundary] down as best [he] possibly could. . . . If there's additional evidence or records or another additional surveyor looked at it, they could very well come up with a different line than I do along the northerly line [of Meadowbrook's property]." He further testified that while he was confident about the location of the westerly boundary line, southerly boundary line, and easterly boundary line (the river), he was "less confident" about the northern boundary line of the

11

property.  Given Babcock's testimony, we discern no error in the judge's conclusion that the Andresses had not met their burden to establish the location of their southern boundary line.

4. Scope of the Andresses' easement over the lane.  The parties have no dispute regarding the location of the lane or that the Andresses have an easement over it to access their property.  The disagreement focuses on the scope of the easement.  The amended judgment specifically prohibits the Andresses from taking "any actions on the right of way [the lane] which would be detrimental to horses."  The Andresses contend that the judge erred because their rights are established by deeds dating back to the 1700s that include an express right of way over the lane which is an unlimited general easement.  Therefore, they argue, the judge could not lawfully limit the scope of the easement by prohibiting them from improving the lane.  Significantly, however, the judge found that the Bucklins and a predecessor to the Meadowbrook property, Carolyn Leaonard, were involved in litigation over the use of the lane and in 2001 entered into a stipulation, incorporated into a judgment, which recognized the Bucklins' right of way over the lane, but limited it by providing that they "shall not make any improvements to the surface of said way which would be detrimental to the well-being of the horses which customarily

12

use the same."[9]  The judge determined that the stipulation

defines the present scope of the easement.

The Andresses do not challenge the validity of the

stipulation on which the judge relied.  Rather, they argue that

the stipulation has no bearing on their right to improve the

lane by, among other things, installing utility components,

because their right to do so is authorized under G. L. c. 187,

§ 5.  That section provides in pertinent part:

> "The owner or owners of real estate abutting on a private
> way who have by deed existing rights of ingress and egress
> upon such way or other private ways shall have the right by
> implication to place, install or construct in, on, along,
> under and upon said private way or other private ways
> pipes, conduits, manholes and other appurtenances necessary
> for the transmission of gas, electricity, telephone, water
> and sewer service, provided such facilities do not
> unreasonably obstruct said private way or other private
> ways, and provided that such use of the private way or
> other private ways does not interfere with or be
> inconsistent with the existing use by others of such way or
> other private ways."

G. L. c. 187, § 5.

As a preliminary matter, we agree with the judge that the

2001 stipulation establishes the scope of the easement.  In

addition, we agree with the judge that based on Doucette's

---

[9] The stipulation provides that the Andresses' predecessors "are entitled to use (for all purposes for which public ways are customarily used in the town of Norton . . .) as access to and from [the Andresses' predecessors' property] over and upon a private way known as Meadowbrook Lane, and over and upon a private way known as Pine Needle Lane."

13

testimony, which the judge credited, the proposed changes to the lane will adversely affect the horses and, as a result, those changes or improvements exceed the scope of the Andresses' easement as it is defined by the stipulation.[10]  However, that the improvements proposed thus far were not permissible does not mean that all improvements to the lane are prohibited by the stipulation or the statute.  There very well could be improvements to the lane, which have not yet been proposed, that would not be detrimental to its use by horses and that do "not interfere with" or are not "inconsistent with the existing use" of the lane.  G. L. c. 187, § 5.  Here, however, the amended judgment explicitly prohibits any changes to the lane.  The amended judgment provides that the Andresses

> "have the use of the right of way for travel only to access their land, but do not have the right to use the right of way to widen, change the topography, install conduits, pipes, poles or other instrumentalities needed in connection with utilities as a general right of way in a private way is limited only to purposes of travel."

---

[10] The Andresses argue that the judge should not have relied on Doucette's testimony because she was not designated as an expert.  The argument requires little discussion.  We discern no error or unfair surprise.  Doucette was qualified to testify as to whether the proposed changes to the lane will be detrimental to the horses and there was no objection to the testimony.  Further, the scope of the easement was squarely raised in the Andresses' amended counterclaim which sought to enjoin Meadowbrook from preventing the Andresses from improving the lane and expressly asserted that the proposed changes would not be detrimental to horses.

14

In so ruling, the judge interpreted the stipulation too broadly. We do not comment or suggest what improvements might be permissible, but insofar as the amended judgment prohibits <u>any</u> changes to the width, topography, and the installation of any utility components, even those that would not cause any harm to horses, it goes too far.

<u>Conclusion</u>.  The portion of the amended judgment prohibiting the Andresses from making any changes to the lane is vacated, and the case is remanded to the Superior Court for entry of a modified injunction regarding the Andresses' improvements to the lane consistent with this memorandum and order.  In all other respects, the amended judgment is affirmed.

<u>So ordered</u>.

By the Court (Vuono, Desmond & Toone, JJ.[11]),

Clerk

Entered:  January 9, 2026.

---

[11] The panelists are listed in order of seniority.